314 April 20, 2017 No. 20

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

SEAN MICHAEL McNALLY,
*Petitioner on Review.*

(CC 111152528; CA A150977; SC S063644)

On review from the Court of Appeals.*

Argued and submitted May 10, 2016.

Andrew D. Robinson, Deputy Public Defender, Salem, argued the cause and filed the briefs for the petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, Salem, argued the cause and filed the brief for the respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, and Flynn, Justices, and Baldwin, Senior Justice *pro tempore.***

BALMER, C. J.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the circuit court for further proceedings.

KISTLER, J., concurred in the judgment and filed an opinion in which Landau and Brewer, JJ. joined.

_____

* Appeal from Multnomah County Circuit Court, Alicia A. Fuchs, Judge. 272 Or App 201, 353 P3d 1255 (2015)

** Nakamoto, J., did not participate in the consideration or decision of this case.

**BALMER, C. J.**

After defendant refused to comply with a police officer's order to leave a bus station, the officer arrested him and charged him with, among other things, the misdemeanor offense of interfering with a peace officer. ORS 162.247(1)(b). At defendant's subsequent trial, defendant asked the trial court to instruct the jury that it should acquit him of the charge of interfering with a peace officer if it found that he had engaged in passive resistance. *See* ORS 162.247(3)(b) (providing that person who is engaging in "passive resistance" does not commit crime of interfering with a peace officer). The trial court refused to give that instruction, and the jury found defendant guilty on all charged counts. On defendant's appeal, the Court of Appeals affirmed defendant's conviction for interfering with a peace officer, holding that defendant had not been entitled to a passive resistance instruction, because only someone who is performing specific acts or techniques commonly associated with governmental protest or civil disobedience can be said to be engaged in "passive resistance." *State v. McNally*, 272 Or App 201, 207, 353 P3d 1255 (2015).

We allowed defendant's petition for review and now hold that the phrase "passive resistance" refers to noncooperation with a peace officer that does not involve violence or other active conduct by the defendant. Accordingly, we reverse the Court of Appeals' decision affirming defendant's conviction for interfering with a peace officer and remand the case to the trial court for further proceedings; we otherwise affirm the decision of the Court of Appeals.

The relevant facts are not in dispute. Defendant began arguing with a ticket agent at a Greyhound bus station in Portland and the ticket agent asked defendant to leave the station. When defendant refused, the ticket agent called over a security guard, who also asked defendant to leave. When defendant again refused, the security guard called the police, and some time later, two officers arrived. One of the officers told defendant to leave. Defendant tried to describe his dispute with the ticket agent, but the police officer picked up defendant's belongings and carried them outside. Defendant followed. When the officer repeated his

order to defendant to leave, defendant continued to refuse, insisting that the officer "couldn't make him leave," and he continued to explain his situation.

The officers decided to arrest defendant. Rather than inform defendant that he was under arrest, the officers communicated with each other by means of a code number that they intended to arrest him. When defendant's attention was diverted, one officer placed defendant in a headlock. Defendant pulled away and the officer attempted to regain physical control. The second officer joined the fray and all three tumbled to the ground. Defendant was eventually handcuffed and arrested.

Defendant was charged with second-degree criminal trespass, interfering with a peace officer, and resisting arrest. At the ensuing jury trial, defendant contended that he should be acquitted of the crime of interfering with a peace officer because his refusal to leave the station constituted "passive resistance." *See* ORS 162.247(3)(b) (providing that person who is engaging in passive resistance does not commit the crime of interfering with a peace officer). Defendant asked the court for the following special instruction to the jury:

> "If you find that [defendant] engaged in activity that would constitute * * * passive resistance then you should find [defendant] not guilty of Interfering with a Peace Officer."

The trial court refused to give that instruction.[1] Defendant also had raised the defense of self-defense to the charge of resisting arrest, and he asked the court for a special self-defense jury instruction. *See* ORS 161.209 (providing that a person may use "physical force upon another person for self-defense * * * from what the person reasonably believes to be the use or imminent use of unlawful physical force"). The court also declined to give that requested special instruction. The jury found defendant guilty of all three charges.

Defendant appealed his convictions for interfering with a peace officer and for resisting arrest, assigning error in each instance to the trial court's failure to give the

---

[1] Defendant did not offer an instruction that defined the term "passive resistance."

requested special instruction. The Court of Appeals agreed with defendant that the trial court erred in failing to give the requested self-defense instruction on the resisting arrest charge and that that error was not harmless. Accordingly, the Court of Appeals reversed defendant's conviction for resisting arrest. *McNally*, 272 Or App at 209-10. Neither party challenges that result in this court.

With respect to defendant's contention that the trial court erred in failing to give the jury his proposed special instruction stating that a person does not commit the offense of interfering with a peace officer if the person is engaging in passive resistance, the state conceded error in the Court of Appeals. The Court of Appeals, however, rejected that concession. *Id*. at 207. The court stated that, under its then-recent decision in *State v. Patnesky*, 265 Or App 356, 335 P3d 331 (2014), the phrase "passive resistance" in ORS 162.247(3)(b) applies only to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *McNally*, 272 Or App at 207 (quoting *Patnesky*, 265 Or App at 366).[2] The court then held that

> "there was no evidence from which the jury could find that defendant was engaged in an act or technique that is associated with government protest or civil disobedience[,] *** [and e]ven assuming that the jury credited defendant's version of the events, nothing suggests that defendant was engaging in a non-cooperative technique or act known to be used to protest government action. Therefore, the trial court correctly refused to give defendant's proposed passive-resistance instruction."

*McNally*, 272 Or App at 207.

On review, defendant argues that he was entitled to the passive resistance instruction because the term "passive resistance" in ORS 162.247(3)(b) refers to any interference or disobedience that is not physical or active; a political motive is not required, nor is the term limited to specific "acts" or "techniques." Alternatively, defendant argues that,

---

[2] The Court of Appeals in *Patnesky* also stated that, to be "engaging in *** passive resistance" for purposes of ORS 162.247 a person must take "purposeful, deliberate, planned, or coordinated action that represents something more than the mere refusal to obey a particular order during a particular police encounter." *Patnesky*, 265 Or App at 362 n 3.

even if passive resistance must be part of a political protest, the evidence in this case supported the passive resistance instruction. Defendant notes that he told the police officer that the officer "couldn't make him leave," and that he testified at trial that he viewed the police officer's order to leave the bus station as a "huge injustice"; therefore, he argues, viewing the evidence in the light most favorable to him, a reasonable juror could have concluded that defendant refused to obey the order to leave the bus station at least in part as a political protest against that injustice.[3]

In its response in this court, the state raises a new and novel interpretation of the phrase "passive resistance." The state now contends that the legislature intended a definition of passive resistance that is more restrictive than the one that the Court of Appeals identified. According to the state, the scope of the passive resistance exception in ORS 162.247 is limited to passive resistance *to an arrest*. The state asserts that the legislative history of ORS 162.247 shows that the legislature did not intend for the exception to apply *at all* in situations when a person passively refuses to obey a lawful order that does not involve an arrest. Thus, because defendant refused to obey an order that did not involve an arrest—the arrest in this case took place later— the state contends that defendant was not entitled to the passive resistance instruction.

The state also offers an alternative argument that nods at the Court of Appeals' analysis but, ultimately, again

---

[3] We note that defendant characterizes the question presented as whether passive resistance must be "politically motivated." However, neither the Court of Appeals nor the state clearly takes the position that passive resistance, for purposes of ORS 162.247(3)(b), requires a distinct *political* motivation. In *Patnesky*, the Court of Appeals adverted to that interpretation, stating that what the legislature "had in mind to protect [were] refusals to move or to stand when an individual is engaging in governmental protest or civil disobedience—an understanding in accord with the term's common meaning." *Patnesky,* 265 Or App at 365. Elsewhere in *Patnesky*, however, and in the Court of Appeals' decision in this case, as discussed in the text, the court focused on conduct, rather than motivation, interpreting "passive resistance" to mean '*specific acts or techniques* that are commonly associated with governmental protest or civil disobedience,' *McNally,* 272 Or App at 207 (emphasis added; quoting *Patnesky,* 265 Or App at 366) (emphasis added). The state's (alternative) position in this court is that, although the term arises out of "the civil-rights context," it refers generally to "a refusal to comply [with a lawful order] that is deliberate, open, and motivated by conscience or principle."

concedes error. The state asserts that, assuming for purposes of argument that the passive resistance exception applies in non-arrest situations, the Court of Appeals was correct that "passive resistance" means more than merely non-physical interference or disobedience. However, the state goes on, rather than requiring the existence of "specific acts or techniques that are commonly associated with civil disobedience," "passive resistance" means a refusal to comply that is deliberate, open, and motivated by conscience or principle. The state thus agrees with defendant that (if the passive resistance exception applies in non-arrest situations) the trial court erred in refusing to give defendant's proposed special instruction, because there was some evidence in the record that defendant's refusal to comply with the officer's order was motivated by principle, pointing to defendant's trial testimony that the order was an "injustice."

This court reviews a trial court's refusal to give a requested jury instruction for errors of law. *State v. Reyes-Camarena*, 330 Or 431, 441, 7 P3d 522 (2000). A criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it. *State v. Simonov*, 358 Or 531, 533, 368 P3d 11 (2016).

Defendant was charged with interfering with a peace officer under ORS 162.247(1)(b), for refusing to obey the police officer's lawful order to leave the bus station. ORS 162.247 provides:

"(1)   A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181A.355:

"(a)   Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or

"(b)   Refuses to obey a lawful order by the peace officer or parole and probation officer.

"* * * * *

"(3)   This section does not apply in situations in which the person is engaging in:

"(a)  Activity that would constitute resisting arrest under ORS 162.315; or

"(b)  Passive resistance."

Defendant's theory of the case is that he is not guilty of the crime of interfering with a peace officer because, in refusing to obey the officer's order, he was engaged in passive resistance. Defendant's proposed special instruction on the passive resistance exception to the offense of interfering with a peace officer was in accordance with that theory of the case. Moreover, there is no dispute that the proposed instruction was consistent with ORS 162.247 and, therefore, was a correct statement of the law. Thus, the only question presented is whether there was some evidence in the record to support giving that instruction. And the answer to that question depends on what it means to be engaged in "passive resistance" under ORS 162.247(3)(b).

Our task in interpreting the meaning of the phrase "passive resistance" in the statute is to discern the legislature's intent in drafting ORS 162.247, looking primarily to the statute's text, context, and legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the text of the statute, because the words that the legislature uses in a statute are the most persuasive evidence of the legislature's wishes. *Alfieri v. Solomon*, 358 Or 383, 392, 365 P3d 99 (2015).

The phrase "passive resistance" is not defined in ORS 162.247 or elsewhere in the statutes. In such a circumstance, we first consider the "plain, natural, and ordinary" meaning of the phrase. *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) (when legislature has not defined a phrase, court assumes, at least initially, that the word or phrase has its plain, natural, and ordinary meaning); *State v. Walker*, 356 Or 4, 14, 333 P3d 316 (2014) (because term was not defined in statute, court considered its ordinary meaning). As the court explained in *Muliro*, to understand the "plain, natural and ordinary meaning" of a phrase, the court "frequently consult[s] dictionary definitions of the terms, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally

have intended." 359 Or at 746. When the phrase is a term of art, drawn from a specialized field, courts "look to the meaning and usage of those terms in the discipline from which the legislature borrowed them." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014). And, specifically, when the phrase is a legal term of art, courts turn to legal dictionaries to understand the established legal meaning. *Id.*; *Muliro*, 359 Or at 746.

The phrase "passive resistance" is a term of art that has the same meaning whether considered in a lay or a legal context. For example, *Webster's Third New International Dictionary* defines "passive resistance" as follows:

> "resistance (as to a government or an occupying power) that does not resort to violence or active measures of opposition but depends mainly on techniques and acts of noncooperation."

*Webster's Third New Int'l Dictionary* 1651 (unabridged ed 2002). *Black's Law Dictionary* defines the phrase similarly:

> "[o]pposition by noncooperation; specif., a method of protesting something, esp. a government, by refusing to cooperate while using no violence."

*Black's Law Dictionary* 1299 (10th ed 2014).[4] Under both of those definitions, passive resistance is opposition to an exertion of a government or occupying power—a refusal to cooperate with that government or occupying power—without use of violence or active conduct. Although the definition in *Black's* provides, as an example, "a method of protesting something," neither definition requires a specific political purpose. Rather, both dictionaries support a potentially broader interpretation of "passive resistance" as, simply, resistance or "refus[al] to cooperate" with a government power that does not involve violence or active measures.

Similarly, although those dictionaries mention "techniques and acts" and "methods" as illustrations of the *means* by which a person may engage in passive "resistance" or "noncooperation," the focus of the definition is on those

---

[4] The edition of *Black's* that was published in 1999, the year that the relevant statutory wording was adopted, did not define the phrase "passive resistance." *Black's Law Dictionary* (7th ed 1999).

ends. Thus, the two central elements of "passive resistance," as used in ORS 162.247(3)(b), are the "passive," as opposed to active, nature of the defendant's conduct, and the notion of noncooperation with or refusal to obey a government agent's order. [5]

That said, there is some tension inherent in the phrase "passive resistance," in that the word "passive" connotes "not active" or "unresisting," *see Websters* at 1651, while at least some definitions of the word "resistance" include activity or engagement. *See id.* at 1932 (defining "resist" to mean "to exert oneself to counteract or defeat : strive against : OPPOSE") Thus, it is not entirely clear from the text of ORS 162.247(3) whether every instance of noncompliance or noncooperation with the lawful order of a peace officer may constitute "passive resistance," and we return to that question below.

In *Patnesky*, the Court of Appeals held that the term "passive resistance" describes a narrower range of behavior than we tentatively have identified. The court first noted, as we have, that *Webster's* defines "passive resistance" as resistance that depends mainly on "techniques and acts of noncooperation." 265 Or App at 360. It then turned to *Webster's* for the definition of "noncooperation"—a word that does not appear in ORS 161.247. Although *Webster's* defines "noncooperation" generally as a "failure or refusal to cooperate," the court focused not on that general definition but on an example used to illustrate the definition: the " 'refusal through civil disobedience *** of a people to cooperate with the government of a country—used esp. of the policy of Gandhi and his followers in India.' " *Id.* at 360-61 (quoting *Webster's* at 1536).[6] From there, the court turned

_____

[5] Defendant argues that we should not interpret the compound noun "passive resistance" itself, but rather should consider separately the dictionary definitions of the words "passive" and "resistance." The legislative history, discussed below, indicates that the legislature used the two words as a single term. Even considering the words separately, however, as we do shortly, leads to a definition that is similar to that of the term "passive resistance." Nothing in those definitions suggests that passive resistance must be part of a political protest or is limited to specific methods associated with civil disobedience.

[6] Interestingly, the first definition of "noncooperation" in *Black's* does not import any notion of political protest or civil disobedience. Rather, it is simply "[t]he refusal to work with someone else to achieve some mutually beneficial result or to do as someone else requests." *Black's Law Dictionary* at 1214.

to the *Webster's* definition of another term that does not appear in the statute, "civil disobedience," which, the court observed, includes a political element.[7] 265 Or App at 361.

Although the Court of Appeals did not go so far as to state that "passive resistance" requires a showing that the defendant was engaged in a political protest, it limited the reach of that term to "acts and techniques commonly associated with governmental protest or civil disobedience," *id.*, at least suggesting that the exception in ORS 162.247(3)(b) might be available only in the context of a political protest.[8] Certainly, aspects of the dictionary definitions and the common understanding of "passive resistance" support the notion that the legislature intended the exception to apply when a person's conduct and motivation bear the hallmarks of classic acts of civil disobedience, such as sit-in demonstrations in support of civil rights. But the question is whether the term is *limited* to such conduct and motivation. As discussed above, the term "passive resistance" is at least capable of an interpretation that includes conduct in addition to "acts and techniques" commonly associated with civil disobedience and motivations in addition to explicitly political protest. To determine whether we should adopt that more expansive interpretation, we must look beyond the statutory text.

To that end, we note that dictionaries do not tell the whole story of statutory interpretation. *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (court does not interpret statutes solely on the basis of dictionary definitions); *State v. Glushko/Little*, 351 Or 297, 311, 266 P3d 50 (2011) (statutes are not interpreted by culling dictionaries for favorable

---

[7] *Webster's* defines "civil disobedience" as the "refusal to obey the demands or commands of the government esp. as a nonviolent collective means of forcing concessions from the government." *Id.* at 413. We note that the "refusal to obey the demands or commands of the government" does not by itself convey a political element (except to the extent that than every refusal to obey a government demand might be considered "political"). An inference of political motivation may only be found in the example given—"esp. as a nonviolent collective means of forcing concessions from the government."

[8] Moreover, as noted previously, 361 Or at 319 n 3, after considering the legislative history, the court stated in *Patnesky,* that the legislature intended "passive resistance" to refer to "refusals to move or to stand when an individual is engaging in governmental protest or civil disobedience." 265 Or App at 365.

definitions). Rather, context and legislative history also inform our view of the meaning of the words used. *Gaines*, 346 Or at 171-72. Context includes both related statutes and earlier versions of the statute at issue. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes related statutes); *State v. Bailey*, 346 Or 551, 561, 213 P3d 1240 (2009) (relying on closely related statute as context); *State v. Ziska/Garza*, 355 Or 799, 806, 334 P3d 964 (2104) (analysis of the context of a statute may include prior versions of the statute). In this case, context includes a related statute, ORS 162.315, which defines the crime of resisting arrest and also uses the phrase "passive resistance." Context also includes earlier versions of ORS 162.247.

The state contends that, as the Court of Appeals held, context and legislative history show that the legislature intended the phrase "passive resistance" to have a more specific meaning than the dictionaries provide. In the state's primary argument, it contends that context and legislative history show that the phrase "passive resistance" is limited to passive resistance to arrest. The Court of Appeals, relying on its earlier decision in *Patnesky*, concluded that essentially the same context and legislative history show that "passive resistance" means "specific acts or techniques that are commonly associated with government protest or civil disobedience." *McNally*, 272 Or App at 207 (quoting *Patnesky*, 265 Or App at 366). As we will explain, both of those analyses miss the mark. We start with the state's preferred interpretation of the statute.

The state's argument can be summarized as follows: the phrase "passive resistance" in the resisting arrest statute, ORS 162.315, refers only to passive resistance *to arrest*, and the legislature intended that phrase to have the same meaning in ORS 162.247. ORS 162.315 provides:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

(2)   As used in this section:

"* * * * *

"(c)  'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. *Passive resistance does not constitute behavior intended to prevent being taken into custody.*"

(Emphasis added.)

The state begins by observing that a person "resists" arrest under ORS 162.315 when he or she intentionally engages in any activity during the course of an arrest that creates a substantial risk of injury to any person, but not when the person is engaging in "passive resistance." The state then points out that that definition of "resists" in ORS 162.315 was in effect in 1997, when the legislature originally criminalized interfering with a peace officer by enacting ORS 162.247. The state acknowledges that, in its first iteration in 1997, the prohibition on interfering with a peace officer did not use either the phrase "passive resistance" or "resisting arrest." Rather, the statute provided that "[t]his section does not apply in situations in which a peace officer is making an arrest." ORS 162.247 (1997). As the state explains, in enacting that version of ORS 162.247, the legislature was concerned with ensuring that a person could not be charged with both resisting arrest and interfering with a peace officer based on the same conduct. Tape Recording, Senate Committee on Judiciary, Subcommittee on Crime and Corrections, SB 423, Feb. 19, 1997, Tape 13, Side A (statement of Rep. Floyd Prozanski). However, the exception for "situations in which a peace officer is making an arrest" proved too broad in practice to accomplish that goal. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of counsel John Horton) (so stating). Therefore, two years later, the legislature proposed an amendment to ORS 162.247—HB 3374—that eliminated that wording and inserted in its place a provision that ORS 162.247 would not apply "in situations in which the person is engaging in activity that would constitute resisting arrest under

ORS 162.315." Exhibit P, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999.

Thus, as originally proposed, HB 3374 clarified that ORS 162.247 could not be used to charge an individual with interfering with a peace officer, if the individual was being charged with resisting arrest based on the same conduct. However, that version of HB 3374 did not include an express exception for passive resistance. The reference to passive resistance was added in a later amendment to HB 3374. Exhibit G, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 6, 1999 (adding second exemption, for "passive resistance"). As the bill's sponsor, Representative Floyd Prozanski, explained,

> "[T]he intent of all this previous legislation including resisting arrest, was that if someone was passively resisting they would not be, let's say, subject to a charge of either resisting arrest, and it's always been intended that they not be subject to a charge for interfering with a peace officer. And this basically clarifies that if someone is passively resisting, such as in a protest situation, they would not be subject to this law. Specifically, as if an officer asks them or orders them to stand up to be arrested, that could be interpreted as a refusal to obey a lawful order of an officer. And since this was supposed to protect the safeguards of the individuals that are peacefully, without any violence, protesting, that they would not be held accountable as long as it was only passive resistance."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 6, 1999, Tape 185, Side B (statement of Rep. Floyd Prozanski).[9] As the state characterizes the foregoing statement, the amendments to ORS 162.247 were intended to exempt not only activity that was punishable under the resisting arrest statute, but also activity that was not punishable under that statute because it fell within the passive resistance exception in ORS

_____

[9] During committee hearings in 1999, Representatives Prozanski and Mannix both discussed at various times the meaning of "passive resistance" in terms of the intent behind legislation adopted in 1997. Ordinarily, of course, "a legislator's views on the meaning of existing law are of little, if any, probative value." *Brown v. SAIF*, 361 Or 241, 269, ___ P3d ___ (2017). Here, however, that discussion is relevant because it informs their intent in using that term in the bill before the committee that was enacted into law in 1999.

162.315. According to the state, the original version of ORS 162.247, the legislative history of the amendments to that statute, and the related crime of resisting arrest together show that the legislature added the passive resistance exception to ORS 162.247 to ensure *only* that a person who passively resists *an arrest* would not be prosecuted for interfering with a peace officer for that conduct. Thus, the state continues, because defendant was not under arrest when he refused to comply with the police officer's lawful order to leave the bus station, it follows that the passive resistance exception in ORS 162.247 did not apply to him.

The state's argument fails for several reasons. First, as the state has conceded, the text of ORS 162.247 does not expressly provide that passive resistance is limited to arrest situations. It is axiomatic that this court does not insert words into a statute that the legislature chose not to include. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").

Second, the state's argument relies on a faulty assumption. That is, the state's unspoken premise is that the meaning of the phrase "passive resistance" in ORS 162.315—the resisting arrest statute—is necessarily limited to passive resistance *to arrest* and not to resistance to other kinds of government authority. However, the resisting arrest statute, like ORS 162.247, does not define the phrase "passive resistance." And, as we have stated, the "plain, natural, and ordinary" meaning of the phrase "passive resistance" is broader, connoting noncooperation with a government power without use of violence or active measures; nothing in the term suggests that it is limited to arrest situations. To be sure, in the context of the statute defining the crime of resisting arrest, ORS 162.315, the passive resistance exception, whatever else it might mean, plainly applies to passive resistance to arrest. But there is nothing in the text or context of the resisting arrest statute to suggest that the legislature intended to confine the meaning of the phrase "passive resistance" for all purposes, including interfering with a peace officer, to passive resistance *to arrest*.

In fact, the context of the phrase "passive resistance" in the resisting arrest statute—in the paragraph defining "resists"—suggests the opposite. To repeat, ORS 162.315(2)(c) provides,

> "'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person *and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer.* The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

As the italicized wording provides, under that definition, "resistance"—the noun form of the word "resists"— "includes, *but is not limited to*, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer." That is, even under ORS 162.315, "resistance" is not limited to arrest situations. And nothing in the resisting arrest statute as a whole suggests that the legislature intended the phrase "*passive* resistance" in that paragraph to be construed more narrowly.

Third, although the legislative history of the amendments to ORS 162.247 shows that Representative Prozanski understood that the passive resistance exception in ORS 162.247 would apply to a person who passively resists arrest, the state has pointed to nothing in the legislative history that suggests that that exception would apply *only* when the person passively resisting was under arrest. In fact, Representative Prozanski testified on another occasion that the legislature's intention behind the amendments to ORS 162.247 was simply to ensure that peaceful protestors were not exposed to arrest for interfering with a peace officer:

> "I wanted to make certain that the law itself, that the crime of interfering, would not include a passive civil disobedience protestor. So if an order comes in to move, they're not going to be cited for this particular crime."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 179, Side B (statement of Rep. Floyd Prozanski). Similarly,

Representative Kevin Mannix explained the legislative intention behind the amendments as follows:

> "[W]e were trying to respect what I call the traditional civil rights passive resistance when you just say, 'we're protesting, and will not move.'"

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 179, Side B (statement of Rep. Kevin Mannix). For all of the foregoing reasons, we have no trouble rejecting the state's interpretation of the phrase "passive resistance" in ORS 162.247 as applying only to passive resistance to arrest.

We return to the Court of Appeals' interpretation. As we have stated, the Court of Appeals held that "passive resistance" refers only to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *McNally*, 272 Or App at 207 (quoting *Patnesky*, 265 Or App at 366). The court based that conclusion on two factors, neither of which ultimately is persuasive.

First, as we have already discussed, we disagree with the Court of Appeals that the ordinary meaning of "passive resistance" requires consideration of particular "acts or techniques of noncooperation." The court took that phrase from the *Webster's* definition of "passive resistance" as "resistance (as to a government or an occupying power) that does not resort to violence or active measures of opposition but depends mainly on techniques and acts of noncooperation." *Webster's* at 1651. The words "techniques and acts of noncooperation" themselves, however, are very broad, and would apply to virtually any conduct through which a person demonstrates noncooperation. It almost goes without saying that the passive refusal to comply with a lawful order from a peace officer *itself* is a classic example of an "act" or "technique" commonly associated with civil disobedience. Moreover, the focus on "acts" and "techniques" gives insufficient weight to the central aspect of the definition— "resistance *** that does not resort to violence or other measures of opposition." Similarly, in emphasizing the references to particular "methods" in the dictionary definitions of "passive resistance," the Court of Appeals loses sight of the core concept of "opposition by noncooperation." The court's focus

on particular "acts," "techniques" and "methods," therefore, provides limited assistance in understanding the meaning of "passive resistance," the dictionary definitions of which turn on conduct that constitutes "resistance" or "noncooperation."

Second, the Court of Appeals found that the legislative history contains "clear declarations from legislators during [ORS 162.247's] enactment that what they had in mind to protect are refusals to move or to stand *when an individual is engaging in governmental protest or civil disobedience*." *Patnesky*, 265 Or App at 365 (emphasis added). It is true that the legislative history of the amendments to ORS 162.247 is replete with statements indicating the legislature's interest in ensuring that nonviolent political protestors would not be punished under ORS 162.247. The opinion in *Patnesky* contains the following examples from the House Judiciary Committee discussion of the reasons for the 1999 amendments to ORS 162.247:

> "'In my community there are a lot of people that want to have passive resistance under the MLK approach or the Gandhi approach of just basically being there as a presence but not doing anything physically in the way of waving arms or swinging stuff. * * * That's the other reason that I wanted to make certain that the crime of interfering would not include a passive civil disobedience protestor. So if an order comes in to move, they're not going to be cited for this particular crime.'

> "Tape Recording, House Judiciary Committee, HB 3374, May 4, 1999, Tape [179], Side B (statement of Rep Prozanski). In response to an inquiry by Representative Jo Ann Bowman about whether civil disobedience would still be protected under the amendment, Committee Chair and Representative Kevin Mannix replied:

> "'So if you were lying down and officers had to pick you up, that was okay. On the other hand, if they were trying to pick you up and you started swinging at them or whatever, doing something physically * * * that that became at least interference if not resistance, but you had to be doing something physically to resist or to interfere, but, just being passive was not. Because we were trying to respect what I call the traditional civil rights. Passive resistance when you just say, 'we're protesting, and we will not move.'

"Tape Recording, House Judiciary Committee, HB 3374, May 4, 1999, Tape [179], Side B (statement of Chair Mannix). Prozanski added:

"'This is where we would be holding someone accountable for interfering with a peace officer and the intent of all the previous legislation including resisting arrest that if someone was passively resisting they would not be subject to a charge of either resisting arrest or and it's always been intended that they would not be subject to a charge of interfering with a peace officer and this basically clarifies that if someone is passively resisting such as in a protest situation they would not be subject to this law, specifically if an officer asked them or ordered them to stand up to be arrested. That could be interpreted as refusal to obey a lawful order of an officer and since this was supposed to protect the safeguards of the individuals that are peacefully without any violence protesting that they would not be held accountable so long as it was only passive resistance.'

"Tape Recording, House Judiciary Committee, HB 3374, May 6, 1999, Tape [185], Side B (statement of Rep Prozanski)."

*Patnesky*, 265 Or App at 364–65 (internal quotation marks omitted).

        However, as this court has stated, the fact that the legislature had a specific concern in mind in enacting legislation does not mean that the legislature necessarily intended the legislation to address only that concern:

"What the legislature 'had in mind,' however, often is not realistically the right question. Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention. *** When the express terms of a statute indicate such broader coverage, it is not necessary to show that this was its conscious purpose."

*South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788, 792 (1986). *See also Hamilton v. Paynter*, 342 Or 48, 55, 149 P3d 131 (2006) (legislative history of statute spoke only of problem as it related to insurers, but statutory

text—which used the word "person"—showed that, even if the legislature only had that particular problem of insurers in mind, it chose to use broader solution); *Clackamas County v. 102 Marijuana Plants*, 323 Or 680, 688, 920 P2d 149 (1996) (upholding broad interpretation of statutory wording notwithstanding legislative "findings" in first section of statute indicating that legislature intended narrower scope; those findings were reasons to vote for bill, but were not stated to be limits on the broader wording actually used in the operative section of the statute).

In this case, although the legislative history of the amendments to ORS 162.247 shows that those amendments were enacted with the objective of protecting people engaged in some kind of civil disobedience from arrest for interfering with a peace officer, the legislative history does not suggest that the legislature intended the phrase "passive resistance" to apply *only* in a political protest situation. And, importantly, nothing in the legislative history suggests that only a person who is performing certain "acts" or using certain "techniques" commonly associated with governmental protests or civil disobedience can be said to be engaging in "passive resistance" under ORS 162.247.

Defendant acknowledges that the legislative record does contain one piece of evidence that might support the notion that the legislature intended a narrower interpretation of the phrase "passive resistance." The Senate staff measure summary of HB 3374 provides that "the 'passive resistance' exception to the Interfering with a Police [*sic*] Officer statute is intended to be narrowly construed as referring to situations where there is *organized civil disobedience or civil protest*, and/or passive resistance to an arrest." Staff Measure Summary, Senate Committee on Judiciary, HB 3374C, July 6, 1999 (emphasis added). We do not find that statement dispositive. The legislative history reveals that there were no discussions in the Senate about the amendments to ORS 162.247 before that measure summary was entered into the record. At most, therefore, the measure summary expresses the understanding of the author of that document. It is only one comment in a much larger body of commentary by legislators, a body of commentary

that otherwise does not suggest any limitation of the statute to "organized" protests. And even if the Senate Judiciary Committee actually intended to limit the applicability of the exception to "organized" political protest, that limitation is inconsistent with the wording of the exception. Moreover, it would not protect individuals or indeed anyone spontaneously resisting what he or she perceives as injustice, and thus would be of doubtful constitutionality, insofar as it would subject a significant subset of nonviolent political protest to criminal liability.

To summarize, although the term "passive resistance" in ORS 162.247(3)(b) may be susceptible to different readings, our review of the statute and its context leads us to conclude that that phrase refers to noncooperation with a peace officer's lawful order that does not involve violence or active measures, whatever the motivation for the noncooperation and regardless of whether the noncooperation takes the form of acts, techniques, or methods commonly associated with civil rights or other organized protest.

The state, in its alternative argument, asserts that, even if an organized political protest or a strictly political motive is not required, the legislature had to have intended "passive resistance" to mean more than the mere nonviolent refusal to comply with a lawful order, because, the state contends, defining the exception that way "would largely eliminate the crime of interfering with a peace officer by refusing to comply with a lawful order." According to the state, "[t]ypically, a person refuses to comply with an order verbally, or by refusing to act. *** Thus, the exception would largely swallow the rule."[10] Because the state views it unlikely that the legislature intended that result, the state examines the legislative history for an alternative interpretation. After discussing references in the legislative history to "civil disobedience" and one legislator's mention of "passive resistance under the MLK approach or the Gandhi approach," the state concludes that the legislature intended "passive resistance" to mean an "intentional violation of the

_____

[10] The Court of Appeals made the same point in *Patnesky*: "Defendant's posited definition of passive resistance *** would, if not swallow whole the prohibition of refusing to comply with a peace officer's lawful order, render it ineffectual to an extent not contemplated by the legislature." *Patnesky*, 265 Or App at 365.

law that is inactive in nature, public, and motivated by reasons of principle or conscience." The concurring opinion generally parallels the state's argument, although it eschews the state's proposed focus on motivations of "principle or conscience," and would require instead that the reason for the passive noncooperation be "to express a position on a governmental or other policy choice." 361 Or ___ (Kistler, J., concurring in the judgment).

As an initial matter, we cannot accept the state's premise regarding the effect of rejecting its proposed interpretation of "passive resistance." While, at first blush, it might seem intuitively true that "passive" refusals to obey orders are more typical than "active" refusals, we have not been presented with any evidence that that is actually the case. And even if statistics bore out that impression, it would not prove that the legislature cannot have intended "passive resistance" to have a broader meaning. There are plenty of instances in the criminal code in which the legislature criminalizes certain behavior while exempting the vast majority of people engaged in that behavior from criminal liability. To take just one example, the criminal code criminalizes possession of a controlled substance, but exempts from criminal liability anyone who has a valid prescription for the controlled substance. ORS 475.752(3). Perhaps the majority of refusals to obey a lawful order of a peace office are in fact passive, but it also is not difficult to conceive of scenarios in which a person actively, physically, refuses to obey. For example, a person who runs away when lawfully ordered by a peace officer to stop would violate ORS 167.247(1)(b) and would not be engaged in passive resistance.

This is not, then, a situation in which our construction violates the interpretive imperative in ORS 174.010 to "give effect to all" provisions, or, in other words, not to interpret statutes in such a way as to make parts of them meaningless. ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015) (under ORS 174.010, we generally "assume that the legislature did not intend any portion of its enactments to be meaningless surplusage"). Therefore, even if passive refusals to obey lawful orders are more

common than active refusals, it does not follow that defining "passive resistance" without reference to motivation—to mean simply noncooperation with a government power or without using violence or active measures—would "largely eliminate the crime" of refusing to obey a peace officer.

The state and the concurring opinion are correct that their arguments find some support in the legislative history. The legislative history includes multiple references to protests and civil disobedience and "the MLK approach or the Gandhi approach." We agree that, when the legislature enacted the amendments to ORS 162.247, it had in mind protecting from arrest individuals who were engaged in a peaceful political protest or some other kind of nonviolent civil disobedience. However, as we have stated, the legislative history does not suggest that the legislature intended the phrase "passive resistance" to apply *only* in those situations.

Moreover, confining our understanding of the phrase "passive resistance" even in the limited way that the state urges—to public conduct that is motivated by "conscience" or "principle"—borders on the unworkable. If passive resistance were interpreted to mean more than merely nonviolent or inactive noncooperation, then courts would be required to consider the *bona fides* or legitimacy of the motivation for the refusal in order to decide which beliefs are properly considered matters of conscience or principle and which are not. That inquiry would certainly have constitutional implications.

Passive noncooperation motivated by principle or conscience would include the kinds of civil disobedience described in the legislative history, essentially protecting such protests as a form of expressive conduct. But under the state's (and the concurrence's) proposed tests, the statute would not protect identical conduct by an individual who simply wanted to impress a friend or to achieve the fame of appearing on the evening news. Assuming that a jury or judge could divine the individual's single, actual motivation, would a conviction for interfering with a peace officer for the latter reasons not potentially involve punishing certain conduct on the basis of its expressive content—that is, an

expression of personal, private desire, rather than principle or conscience—in violation of the Oregon and United States constitutions?[11] *See R.A.V. v. St. Paul*, 505 US 377, 393-94, 112 S Ct 2538, 120 L Ed 2d 305 (1992) (holding unconstitutional ordinance that prohibited symbols or displays that insult or might provoke violence "on the basis of race, color, creed, religion, or gender;" because the ordinance proscribed "messages of racial, gender, or religious intolerance," but not other messages that insult or might provoke violence, it constituted impermissible content discrimination).

Permitting some expressive conduct because it is motivated by conscience or principle while punishing identical conduct that is motivated by more private desires raises the issue of potentially impermissible content-based restrictions on speech. Such concerns are one reason that courts often avoid an interpretation of a statute that would raise constitutional problems in application, if another reasonable interpretation of the statute would not. *See DeBartolo Corp. v. Florida Gulf Coast Trades Council*, 485 US 568, 575, 108 S Ct 1392, 99 L Ed 2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); *see also* Adrian Vermeule, *Saving Constructions*, 85 Geo L J 1945, 1949 (1997) (modern application of "saving construction" canon "requires only a determination that one plausible reading [of the statute] *might* be unconstitutional" as opposed to requiring determination that one plausible reading "*would* be unconstitutional.") (emphasis in original). That consideration supports the interpretation that we adopt here.

Finally, in response to the state's argument that the legislature intended "passive resistance" to encompass only a refusal to obey a peace officer's order that is motivated by "principle" or "conscience," we observe that anyone who

---

[11] Article I, section 8, of the Oregon Constitution, provides: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever, but every person shall be responsible for the abuse of this right." The First Amendment to the United States Constitution provides, in part, "Congress shall make no law *** abridging the freedom of speech, or of the press [.]"

refuses to obey such an order is motivated by something and that neither of the words that the state suggests as determinative appear in the statute.

Our construction of the passive resistance exception in ORS 162.247 as referring to noncooperation with a government power that does not involve violence or active measures, whatever the motivation for the noncooperation, avoids, to some extent, the pitfalls described above. It is consistent with the ordinary meanings of the words used, and it is not foreclosed by anything in the legislative history. That interpretation criminalizes the obstruction of the work of the government and peace officers through active physical conduct, while at the same time broadly respecting constitutional principles of freedom of speech and assembly.

We recognize that this interpretation of "passive resistance" as applying to noncooperation beyond well-recognized protest activities, such as sit-ins, may reduce the circumstances in which an individual may successfully be prosecuted for failing to obey the lawful order of a peace officer under ORS 162.247(b). This case provides one example. Similarly, depending on the facts, if individuals blocking a street simply fail to clear the street in response to a police order to move, their actions may constitute "passive resistance" and therefore not violate the statute.

However, even a person who refuses to obey a lawful order of a peace officer by engaging in passive resistance may, depending on the facts, appropriately be charged with other crimes, just as defendant here also was charged with criminal trespass and resisting arrest. Or, to take the example cited in the concurring opinion, 361 Or at ___, although a driver who passively declines to provide his or her driver's license because the license is suspended could perhaps raise passive resistance as a defense to prosecution for refusing to comply with the lawful order of a peace officer, that driver nevertheless could be charged with the misdemeanor offense of failing to present a driver's license. ORS 807.570. And, of course, if the legislature determines that passive resistance, as interpreted and applied here, unduly complicates the work of peace officers in protecting public safety and enforcing the law, it can amend ORS 162.247 to strike

a different balance between the requirement to obey a peace officer's lawful order and the individual's existing statutory right passively to resist such an order.

For the reasons described above, we hold that the phrase "passive resistance" in ORS 162.247 refers to noncooperation with a lawful order of a peace officer that does not involve active conduct. Because there was evidence in the record that defendant engaged in inactive, nonviolent noncooperation when the police officer ordered him to leave the bus station, defendant was entitled to his proposed special instruction stating that a person does not commit the offense of interfering with a peace officer if the person is engaging in passive resistance. The trial court erred in refusing to give that instruction.

That error was not harmless. Evidence at trial showed that defendant refused to leave the bus station when the police officer ordered him to do so, and that defendant had done no more than refuse to move in accordance with the officer's order. When viewed in the light most favorable to defendant, that evidence would have allowed a reasonable juror to conclude that, in defying the police officer's order to leave the bus station, defendant was engaged in passive resistance and that he had not, therefore, violated ORS 162.247.

The decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the circuit court for further proceedings.

**KISTLER, J.,** concurring in the judgment.

ORS 162.247(3)(b) makes "passive resistance" a defense to the crime of refusing to obey the lawful order of a peace officer. The question that this case presents is what "passive resistance" means.[1] The majority holds that

---

[1] The issue in this case arises in an odd posture. The trial court refused to give defendant's requested instruction: "If you find that [defendant] engaged in activity that would constitute *** passive resistance then you should find [defendant] not guilty of Interfering with a Peace Officer." The state has not argued that that instruction was incorrect, and the issue has become whether the trial court's instructional ruling should be affirmed because there was no evidence from which a reasonable juror could have found that defendant engaged in passive resistance. That, in turn, has led to an inquiry into what "passive resistance" means.

every instance in which a defendant declines, peaceably or passively, to comply with an officer's order constitutes "passive resistance" within the meaning of the statute. Under the majority's reasoning, a driver who declines, for any reason or no reason, to provide his or her driver's license to an officer during a lawful traffic stop has engaged in "passive resistance" and, as a result, has a complete defense to the charge of refusing to comply with the officer's order.

Not only is that result counterintuitive, but the majority's reasoning is difficult to reconcile with the text, context, and legislative history of ORS 162.247. Textually, the majority equates noncompliance with resistance, even though the latter term is logically and linguistically narrower than the former. As a matter of context, equating noncompliance with passive resistance effectively eliminates the crime of refusing to obey a lawful order of a peace officer, contrary to the principle that we should give effect to all the terms of a statute. Finally, the legislative history demonstrates that whether a person is engaging in "passive resistance" turns on two issues: (1) the nature of the resistance (whether it is peaceable or passive) and (2) the reason for the resistance (whether the person acts to express a position). The majority is legitimately concerned about interpreting "passive resistance" to avoid viewpoint discrimination, but we can and should answer that concern in a way that gives greater effect to the rest of the statute than the majority's interpretation does.

ORS 162.247(1) prohibits interfering with a police officer and identifies two types of interference. Subsection (1)(a) prohibits "[i]ntentionally act[ing] in a manner that prevents, or attempts to prevent," an officer from performing his or her lawful duties. Subsection (1)(b) prohibits "[r]efus[ing] to obey a lawful order" by the officer. One subsection prohibits certain types of actions while the other prohibits certain

---

One might question, however, the terms of the requested instruction. Within a single encounter, a defendant may engage in multiple acts that could give rise to separate charges of interfering with a peace officer. Some of those acts may be active; others, passive. Contrary to the assumption that underlies the requested instruction, even if one of those acts could constitute passive resistance, it does not necessarily follow that none of those acts would constitute interfering with a peace officer. However, that is what the instruction literally and, in my view, incorrectly said.

types of inaction. The statute also sets out two exceptions to those prohibitions. It provides that "[t]his section does not apply in situations in which the person is engaging in: (a) [a]ctivity that would constitute resisting arrest under ORS 162.315; or (b) [p]assive resistance." ORS 162.247(3).

The phrase at issue in this case—"passive resistance"—consists of two words. "Passive" defines the type of resistance, while resistance means "the act or an instance of resisting: passive or active opposition." *Webster's Third New Int'l Dictionary* 1932 (unabridged ed 2002) (defining resistance). Resistance, by definition, connotes more than the passive failure to comply with a lawful request. It connotes opposition to something. *See id.* (defining "resist" as "to exert oneself to counteract or defeat **:** strive against **:** OPPOSE")." Implicit in that concept is a requirement that a person refuse to comply with an officer's order for some reason, not for any reason or no reason at all.

The accepted use of the phrase reinforces that conclusion. As the majority notes, the phrase "passive resistance" has become a term of art and, as such, has its own particular significance. *Webster's* defines the phrase as meaning "resistance (as to a government or an occupying power) that does not resort to violence or active measures of opposition but depends mainly on techniques and acts of noncooperation." *Id.* at 1651. "Passive resistance," as that phrase has come to be used, means something more than a mere passive failure to comply with a lawful order. It denotes resistance or opposition (albeit passive and peaceable) to a government or an occupying power. To be sure, a person may decline to comply with a lawful order as a way of expressing opposition. But the reason for the noncompliance is what distinguishes passive noncompliance from passive resistance.

The context points in the same direction. As noted, ORS 162.247(3)(b) excepts "passive resistance" from the prohibition in ORS 162.247(1)(b) against refusing to comply with the lawful order of a peace officer. If the majority is correct that "passive resistance" includes all instances in which a person passively declines to comply with an officer's lawful order, then little is left of the prohibition in ORS 162.247(1)(b).

It may be, as the majority notes, that a defendant can actively but peaceably refuse to comply with a lawful order. And it may follow that, as a result, the majority's definition of "passive resistance" does not leave the prohibition in ORS 162.247(1)(b) completely devoid of content. However, the fact that the majority's interpretation does not eviscerate the prohibition is hardly a reason for embracing it if another interpretation reasonably gives greater effect to the prohibition. After all, we should interpret the terms of a statute to give effect to all its parts. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004) (stating that principle).

Moreover, if a person actively refuses to comply with an officer's lawful order, that conduct would seem to fall more naturally within the prohibition in subsection (1)(a) against "act[ing] in a manner that prevents, or attempts to prevent," an officer from carrying out his or her lawful duties. Put differently, if, as a result of the majority's interpretation of passive resistance, the only content that it can give the prohibition in subsection (1)(b) consists of conduct that more naturally comes within the prohibition in subsection (1)(a), then we should think twice before accepting the majority's interpretation.

In my view, the majority's interpretation is also difficult to square with the legislative history. The majority opinion sets out the legislative history in pieces, partly because it relies on individual pieces of the history to rebut the parties' various arguments. Although the majority ends up setting out almost all the relevant history by the end of its opinion, the manner in which it recounts that history may obscure rather than clarify the legislature's intent. Accordingly, I first describe chronologically the legislative history that gave rise to the amendment at issue in this case. I then explain the inferences that I draw from that history.

In 1997, the legislature enacted what is now codified as ORS 162.247. Or Laws 1997, ch 719, § 1. As initially enacted, that statute prohibited, as it does today, interfering with a peace officer either by "act[ing] in a manner that prevents, or attempts to prevent," the officer from carrying out his or her lawful duties or by "refus[ing] to obey a lawful

order" by the officer. *Id.* § 1(1). As initially enacted, subsection (3) of the statute set out a single exception to those two prohibitions. It provided that "[t]his section does not apply in situations in which a peace officer is making an arrest." *Id.* § 1(3). The purpose of subsection (3) was to prevent a person for being convicted twice for the same conduct—namely, to prevent the person from being convicted for resisting arrest and also for interfering with a peace officer.

Two years later, there was a concern that the exception set out in subsection (3) "ha[d] been construed a bit too broadly," and the House Subcommittee on Criminal Law considered an amendment that narrowed the exception. Tape Recording, House Judiciary Committee, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B. The proposed amendment provided that the prohibitions in ORS 162.247(1) do "not apply in situations in which the person is engaging in activity that would constitute resisting arrest under ORS 162.315." Exhibit P, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999. Having discussed the amendment, the subcommittee voted to approve it.

After the subcommittee approved the amendment and was about to move on to another issue, Representative Bowman asked if she could raise a question about the scope of the amendment that the subcommittee had just approved. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B. She asked whether the amendment "change[s] current law so that—so that passive resistance or civil disobedience is now prohibited [by ORS 162.247(1)]." *Id.*

Both Representatives Mannix and Prozanski responded that it did not. Each of them explained that, in his view, the 1997 legislature had intended to exempt passive resistance from the prohibition against interfering with a police officer and that the 1999 amendment to subsection (3) did not eliminate that exemption. *Id.* Representative Mannix, the chair of the subcommittee, explained:

"We were careful, if I may, I can answer that. I was around when we were dealing with these statutes in Judiciary a few years back. We went through true civil disobedience,

the lying down, and tried to craft it so that if you were lying down and the officers had to pick you up, that was okay. On the other hand, if they tried to pick you up and you started swinging at them or whatever, doing something physically, we made a good record on that too, that that became at least interference if not resistance, but you had to be doing something physically to resist or to interfere, but just being passive was not—because we were trying to respect what I call the traditional civil rights passive resistance where you just say you're protesting and will not move."

*Id.* Representative Prozanski added:

"Mr. Chair, we have also when the bill [regarding interfering with a peace officer] was before the committees last time I made that a very clear record because in my community there are a lot of people that do want to have a passive resistance under the MLK approach or the Gandhi approach of just basically—just being there as a presence but not doing anything physically to a—in a way of waiving your arms or swinging stuff and that was made clear. And that's the other reason that I wanted to make certain that this—that the law itself, the crime of interfering, would not include a passive civil disobedience protester."

*Id.* In their view, the amendment that the subcommittee had just approved did not eliminate passive resistance as a defense to interfering with a peace officer. *Id.* Representative Bowman said that those assurances answered her concern. *Id.*

The colloquy among Representatives Bowman, Mannix, and Prozanski is significant for two reasons. First, Representatives Mannix and Prozanski explained that "passive resistance" consisted of two elements: responding passively (not actively) to the officer's orders and doing so, as Representative Mannix put it, as a part of "true civil disobedience" or, as Representative Prozanski put it, "as a passive civil disobedience protester." That is, each representative took the view that "passive resistance" turned both on the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). The reason for the resistance was as integral to the concept of "passive resistance" as the nature of the resistance. In my view, you cannot

read Representatives Mannix and Prozanski's responses to Representative Bowman's question and conclude that either person viewed the nature of the resistance (passive as opposed to active) as the sole defining element of passive resistance.

There is a second reason why the colloquy among the three representatives is significant: It turns out that Representative Bowman's concern was well-founded. As Representative Bowman's question recognized, by narrowing the exception in ORS 162.247(3), the subcommittee inadvertently had removed "passive resistance" as a defense to a charge of interfering with a police officer.[2] As a result, two days later, on May 6, the subcommittee amended subsection (3) again to restore "passive resistance" as a defense to that crime. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 6, 1999, Tape 179, Side B. In explaining the need for the May 6 amendment, Representative Prozanski stated:

"Mr. Chair the [proposed amendment] basically cover[s] an area that you and I had spoken about and was brought to [our] attention after we talked [about this issue] at our last hearing [on May 4]. This is where we would be holding someone accountable for interfering with a peace officer. And the intent of all this previous legislation, including resisting arrest, [was] that if someone was passively resisting they would not be, let's say, subject to a charge of either resisting arrest and it's always been intended that they not be subject to a charge for interfering with a peace officer.

"And this basically clarifies that if someone is passively resisting, such as in a protest situation, they would not be subject to this law. Specifically, *** if an officer asked them

_____

[2] The explanation runs as follows. As amended by the subcommittee on May 4, 1999, subsection (3) provided that the prohibition against interfering with a police officer "does not apply in situations in which the person is engaging in activity that would constitute resisting arrest under ORS 162.315." The definition of resisting arrest in ORS 162.315 does not include "passive resistance"; rather, it expressly excludes it. *See* ORS 162.315. It follows that, when the subcommittee provided on May 4 that "engaging in activity that would constitute resisting arrest under ORS 162.315" was the sole defense to the crime of interfering with a police officer, that defense did not include engaging in "passive resistance." Put differently, Representative Bowman correctly recognized that the May 4 amendment "change[s] current law so that—so that passive resistance or civil disobedience is now prohibited [by ORS 162.247(1)]."

to stand up and be arrested, that could be interpreted as a refusal to obey a lawful order of an officer. And since this was supposed to protect the safeguards of the individuals that are peacefully, without any violence, protesting, *** they would not be held accountable as long as it was only passive resistance."

*Id.*

That explanation reflects Representative Prozanski's conclusion that it was necessary to add engaging in "passive resistance" to engaging in "resisting arrest" to restore the defense of "passive resistance" to the charge of interfering with a peace officer.[3] Representative Prozanski's explanation also reaffirmed the understanding of "passive resistance" that he and Representative Mannix had expressed two days earlier.[4] That is, he again made clear that passive resistance turns on both the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). In my view, the legislative history establishes that both elements must be present before noncompliance will constitute passive resistance.

The majority is not unmindful of that history. It recognizes that, "when the [1999] legislature enacted the amendments to ORS 162.247, it had in mind protecting from arrest individuals who were engaged in a peaceful political protest or some other kind of nonviolent civil disobedience." The majority reasons, however, that "the legislative history does not suggest that the legislature intended the phrase 'passive resistance' to apply *only* in those situations." (Emphasis in original.) In my view, the legislative history does not suggest that the legislature had anything else in

---

[3] For that reason, the state's argument that passive resistance is a subset of resisting arrest is not well taken. There would have been no reason to add "passive resistance" as an exception to ORS 162.247(1) if the state were correct.

[4] On May 4, 1999, Representatives Mannix and Prozanski had expressed their understanding of the 1997 legislation. Ordinarily, a legislator's views on the meaning of an existing statute have little, if any, probative value. *Brown v. SAIF*, 361 Or 241, 269, ___ P3d ___ (2017). However, the May 6, 1999, amendment restored the concept of passive resistance that the legislature had enacted in 1997 and that Representatives Mannix and Prozanski had discussed on May 4, 1999. For that reason, Representative Mannix and Prozanski's description of that phrase on May 4 bears on its meaning.

mind in excepting "passive resistance" from the prohibition against interfering with a peace officer. Moreover, the most natural reading of the text and context leads to the same conclusion that the legislative history does. Reading the text, context, and legislative history together, I would hold that passive resistance requires both an act (passive or peaceable noncompliance) taken for a reason (to express a position on a governmental or other policy). Passive noncompliance, by itself, is not enough.

The majority identifies another basis for not giving effect to the legislative history. It notes that our cases have held that "the fact that the legislature had a specific concern in mind in enacting legislation does not mean that the legislature necessarily intended the legislation to address only that concern." While true, that rule applies when the text of the measure is unambiguously broader than the specific situation that prompted the legislature to act. *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986). However, we recently explained in *[Lake Oswego Preservation Society v. City of Lake Oswego](#)*, 360 Or 115, 129, 379 P3d 462 (2016), that "the fact that a statutory provision describes something in relatively broad terms does not always mean that the legislature intended the most expansive meaning possible." Rather, "where there is evidence [that the] legislature had a more specific meaning in mind and that meaning is consistent with the text, [a] court may appropriately construe [the] text as such even if [the text] permits [a] more expansive interpretation." *Id.* (explaining *[State v. Walker](#)*, 356 Or 4, 17, 333 P3d 316 (2014)).

This case is closer to *Lake Oswego Preservation Society* than *South Beach Marina*. For the reasons explained above, the text of subsection (3)(b) is, at a minimum, ambiguous. It permits (if not requires) a narrower reading than the majority gives it, as does the context. In this situation, the interpretative rule stated in *South Beach Marina* is inapplicable. Applying that rule here results in our not giving effect to the clear intent expressed in the legislative history. Accordingly, I would hold that the question whether a person is "engaging in *** passive resistance" within the meaning of ORS 162.247(3)(b) turns on two issues: (1) the nature of the resistance and (2) the reason for it. The resistance must

be peaceable or passive, and reason for it must be to express a position on a governmental or other policy choice.

The majority raises one final concern. It notes that, if the phrase "passive resistance" is interpreted to apply only to the specific examples set out in the legislative history, the exception would be subject to a claim of viewpoint discrimination. That is, if the legislature granted an exception only to those people who engaged in passive resistance to oppose government action but not to those who engaged in the same activity to support it, the exception would impermissibly favor one viewpoint over another. That same concern presumably led the Court of Appeals to define "passive resistance" by reference to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience" rather than points of view. *See State v. Patnesky*, 265 Or App 356, 366, 335 P3d 331 (2014).

I agree with the majority that the Court of Appeals' solution to that problem—defining passive resistance by reference to acts or techniques—seems artificial and, more importantly, may be too narrow. However, in my view, the majority's interpretation of passive resistance is too broad. To save the exception for passive resistance, the majority sacrifices the prohibition against refusing to comply with the lawful order of a peace officer. In my view, we need not interpret "passive resistance" to include all passive or peaceable noncompliance, as the majority does, to avoid a claim of viewpoint discrimination. It is sufficient to say that the phrase "passive resistance" applies to peaceable or passive noncompliance taken to express a position on a governmental or other policy. Defining the reason for passive noncompliance neutrally avoids the risk of viewpoint discrimination that rightly concerns the majority.

Moreover, defining "passive resistance" more narrowly than the majority does gives effect to the legislature's intent that "passive resistance" turns on both the nature of the resistance (passive or peaceable) and the reason for the resistance (to express a position regarding a governmental or other policy). Under the narrower interpretation, a driver who passively declines to provide his or her driver's license because the license is suspended will violate the prohibition

against refusing to comply with the lawful order of a peace officer. *See* ORS 162.247(1)(b). However, under the majority's interpretation, that driver would have a complete defense to a charge of violating the statute since, as the majority interprets "passive resistance," the reason for noncompliance is irrelevant. Under its interpretation, all that matters is whether the noncompliance is peaceable.

To be sure, if "passive resistance" turns not only on the nature of the act but also the reason for it, the trier of fact will have to determine the reason a defendant declined to comply with an officer's request. However, we frequently ask the trier of fact to make that sort of factual determination. For instance, we ask juries to decide why an employer discharged an employee. An otherwise permissible discharge can become impermissible depending on the reason for the employer's act. Similarly, the legislature asks juries to decide why a defendant committed an assault, and it enhances the penalty if the defendant assaulted a victim because of the victim's actual or perceived membership in a protected class. *See State v. Plowman*, 314 Or 157, 161-62, 838 P2d 558 (1992) (upholding that reason for enhancing the penalty against a claim that the statutory scheme was vague and thus incapable of consistent application). Asking juries to decide why a defendant declined to comply with an officer's request follows that familiar pattern.

In this case, the state concedes that, if "passive resistance" turns on why the defendant declined to comply with the officer's orders, there was evidence from which jury could have found that he did so to express a position on a governmental or other policy. Given the state's concession, I agree with the majority that the Court of Appeals decision should be reversed and the case remanded for further proceedings. Accordingly, I concur in the judgment.

Landau and Brewer, JJ., join in this opinion concurring in the judgment.