Submitted July 29, 2013, affirmed September 10, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH ANDREW PATNESKY,
*Defendant-Appellant.*

Jackson County Circuit Court
112702MI; A149433

335 P3d 331

Peter Gartlan, Chief Defender, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant was convicted of interfering with a peace officer, ORS 162.247, resisting arrest, ORS 162.315, and other crimes, but challenges only his conviction for interfering with a peace officer. He assigns error to the trial court's denial of his motion for judgment of acquittal, in which he argued that, because he was not violent or did not physically resist when he refused to obey lawful orders by police officers, the jury could find only that he was engaging in passive resistance, conduct that is not a violation of the offense of interfering with a peace officer.[1] The state remonstrates that defendant's actions—which it characterizes as "active steps" to avoid cooperation with the police investigation—did not constitute passive resistance. We conclude that there was sufficient evidence for a jury to find that defendant was not engaged in passive resistance and that the elements of the crime of interfering with a peace officer had been proven. Accordingly, we affirm.

"Our standard for reviewing the denial of the motion for judgment of acquittal is whether, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Paragon*, 195 Or App 265, 267, 97 P3d 691 (2004). The facts, viewed in the light most favorable to the state, are as follows.

Responding to a dispatch about a report of a hit-and-run accident, Officer Schilder arrived at defendant's

---

[1] ORS 162.247 provides, in part:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610:

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer.

"* * * * *

"(3) This section does not apply in situations in which the person is engaging in:

"(a) Activity that would constitute resisting arrest under ORS 162.315; or

"(b) Passive resistance."

residence. Schilder walked up defendant's driveway, where he found defendant standing with his back to him, next to a Jeep whose doors and top had been removed. Defendant did not turn around when Schilder asked him, "Hey, can I talk to you?" When Schilder asked again, "Hey, can I talk to you? I need to talk to you real quick man," defendant was holding a door to the Jeep and appeared to be trying to put the door back on.

Schilder, alarmed that defendant was not responding to his questions, moved closer to defendant and raised his voice to get his attention. Defendant turned to face Schilder and said—in a manner that Schilder described as hostile and aggressive—"Can't you see I'm trying to put the door on my Jeep?" Schilder noticed that defendant's eyes were "bloodshot, red" and that defendant had a "lost look" when he spoke to him. Based on that observation, the fact that defendant did not appear to hear his commands or respond to them, and that the officer found defendant's statement "bizarre" about trying to put his Jeep door back on, Schilder suspected defendant of having driven under the influence of intoxicants.

Defendant moved around the Jeep, grabbed the Jeep's top, and said something about wanting to put the top on. Schilder, believing that defendant had committed a crime and wanting to conduct an investigation, told defendant, "Hey, I need to talk to you. We need to talk." Defendant continued to hold the Jeep top, and Schilder ordered him to stop. Defendant did not stop but instead talked back to Schilder aggressively and proceeded toward him "a little bit." At that point, Schilder pulled out his Taser and ordered defendant to stop and turn around. Schilder felt that defendant's size advantage over him and his aggressive behavior in disobeying his commands required showing the Taser, and he waited for another officer to arrive at the scene.

Eventually Officer Wileman arrived. As Wileman approached Schilder and defendant, he saw defendant refuse to obey Schilder giving orders to turn around and get down on the ground. Wileman also issued commands to defendant and saw him remove a large bundle from a nearby boat. He approached defendant, who began to back away,

and grabbed his wrist to take him into custody. Defendant struggled to get his arms away from the officer. Schilder also moved toward defendant and grabbed defendant's arm. The officers forcibly pushed defendant to the side of the residence to trap him, and defendant continued to resist those efforts. Schilder fired his Taser into defendant's back, and defendant continued to resist by moving his arms and turning toward the officers. Wileman swept defendant's legs to get him to the ground and managed to cuff him after struggling to get his arms behind his back.

Defendant was tried for interfering with a peace officer, among other crimes. At the close of the state's case, defendant moved for a judgment of acquittal on that charge, arguing that his conduct constituted passive resistance. *See* ORS 136.445 ("The court shall grant the motion [for a judgment of acquittal] if the evidence introduced theretofore is such as would not support a verdict against the defendant.") The trial court denied the motion, pointing to "testimony that he was yanking his arms away."

On appeal, defendant does not contest that a lawful order was given or that he failed to obey it, but reprises his argument that his conduct falls within the meaning of "passive resistance." Principally, he contends that conduct that does not involve "violence or some opposing force against the party being resisted" is "passive resistance." He analogizes his behavior to protestors engaged in civil disobedience: his conduct was passive resistance because he "refused to obey an officer's commands by essentially telling the officer that he would not comply, then going about his business. He did not wave his arms, use force, or physically oppose the officer." In defendant's view, a person "need not go limp and be entirely inactive to engage in passive resistance" but "may rely on specific 'techniques' and 'acts of noncooperation' in order to effect an affirmative resistance." In addition, defendant points out that the trial court referred to defendant "yanking his arms away" as the basis for its ruling that defendant's conduct was not passive resistance. That finding, he contends, is relevant to the offense of resisting arrest, not the charge of interfering with a peace officer.

Defendant's appeal presents a question of statutory interpretation, requiring us to look to the text, context, and legislative history of ORS 162.247 to determine what the legislature intended by carving out an exception for "passive resistance." *See State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009). Again, ORS 162.247 provides that an individual engaging in "passive resistance" has not committed the crime of interfering with a peace officer. However, the term is not defined in the text of ORS 162.247.

Our analysis of the meaning of the exception for "engaging in *** passive resistance" begins with the relevant text of the offense—"refuses to obey a lawful order by a peace officer," ORS 162.247(1)(b). A "lawful order" is a direction or command by a peace officer, which is communicative in nature, to a person to do something or stop doing something; such an encounter does not ordinarily encompass physical contact between an officer and an individual, and, accordingly, any response—refusal or compliance—by an individual given a lawful order will not typically consist of physical resistance or violence. ORS 162.247 does not require that the offending conduct be violent or involve physical resistance. Consequently, defendant's interpretation of the term "passive resistance"—conduct that does not involve "violence or some opposing force against the party being resisted"—necessarily includes most conduct that otherwise may be prohibited by ORS 162.247(1)(b).

We conclude, however, that the phrase warrants a narrower interpretation. Under *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993), we give words of common usage their plain, natural, and ordinary meaning. "Passive resistance" is defined as

"resistance (as to a government or an occupying power) that does not resort to violence or active measures of opposition but depends mainly on techniques and acts of noncooperation."

*Webster's Third New Int'l Dictionary* 1651 (unabridged ed 2002).[2] Furthermore, "noncooperation" has a defined meaning—

_____

[2] As defendant mentions in his brief, "passive resistance" is a compound noun, a combination of two words to make a single noun. Additionally, a permanent compound term is a term "that has been accepted into the general vocabulary

"failure or refusal to cooperate; *specif* : refusal through civil disobedience * * * of a people to cooperate with the government of a country—used esp. of the policy of Gandhi and his followers in India." *Webster's* at 1536 (emphasis and boldface in original). What is more, "civil disobedience" means "refusal to obey the demands or commands of the government esp. as a nonviolent collective means of forcing concessions from the government." *Webster's* at 413. The additional definitions of "noncooperation" and "civil disobedience"— and the parenthetical "resistance (as to a government or an occupying power)" contained within the definition of "passive resistance"—suggest a meaning of passive resistance that is more limited than defendant's posited interpretation. Those additional definitions indicate that the common understanding of the term "passive resistance" refers to acts or techniques commonly associated with governmental protest or civil disobedience.

Defendant on appeal refers to the defined meaning of "passive resistance," contending that an individual may rely on "acts of noncooperation" so long as he or she does not "resort to violence or active measures of opposition." That characterization ignores the definition's reference to "resistance (as to a government or occupying power)" or the definitions for "noncooperation" and "civil disobedience." An act of noncooperation is not the same as merely not cooperating. Moreover, we are not persuaded that the dictionary definition answers the question of the legislature's intention in the manner that defendant suggests. Indeed, although that definition suggests that violence and active measures of opposition are *not* included in passive resistance, it does not follow that any act short of violence and active measures of opposition constitutes passive resistance.

Additionally, the "passive resistance" exception to ORS 162.247 applies if a "person is *engaging in* * * * passive resistance." (Emphasis added.) "Engaging in," in this context, means to take part or participate in some activity.

---

and can be found in the dictionary." *The Chicago Manual of Style*, § 7.78 (16th ed 2010). For example, "high school" is a compound term, in which "high" does not function to describe "school"; "high school" has an established meaning that refers to "a secondary school usually public-supported and usually organized on a 3-year or 4-year basis." *Webster's* at 1069.

*Webster's* at 751 (defining, in relevant part, "engage" as "to take part : PARTICIPATE <he *engaged* in a long-winded dispute> <*engaging* in a hog-calling contest>" (boldface and emphasis in original)). Thus, the phrase "engaging in" qualifies "passive resistance" as a particular activity; in this context, "engaging in * * * passive resistance" is not merely a characterization of how an individual may refuse a lawful order in such a way that does not constitute the offense of interfering with a peace officer. In other words, the phrase "engaging in" suggests that the exception's concern is with *what* the person is doing, not with *how* the person is doing it.[3]

A more limited understanding of "passive resistance" is consistent with the legislative history of ORS 162.247 and a related offense, ORS 162.315, resisting arrest.[4] In 1989, the legislature amended ORS 162.315 to expressly exclude passive resistance from the offense of resisting arrest, accommodating the concern at the time of the statute's enactment that it not apply to "'activities intended to obstruct governmental administration, since broadly generalized prohibitory language might be construed as a restriction upon the lawful

---

[3] Defendant also argues that a person is guilty of failure to obey a police officer "unless the person's failure to obey constitutes passive resistance." But that is not, precisely, what the statute says. The statute says that it "does not apply in situations in which a person is engaging in * * * passive resistance." ORS 162.247(3)(b). As noted, the term "engage" means to take part or participate in some activity. And "to engage" or "take part" or "participate" is to take purposeful, deliberate, planned, or coordinated action that represents something more than the mere refusal to obey a particular order during a particular police encounter. Defendant would have us start with his failure to obey and determine whether that action constitutes passive resistance, but the question is whether, when the lawful order was given, defendant was engaging in an undertaking that could be understood as passive resistance to the order ultimately given.

[4] ORS 162.315 provides, in part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"* * * * *

"(c) 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. *Passive resistance does not constitute behavior intended to prevent being taken into custody.*"

(Emphasis added.)

exercise of political agitation in opposition to governmental policy.'" *City of Eugene v. Kruk*, 128 Or App 415, 419, 875 P2d 1190 (1994) (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 198, 199 (July 1971)). In addition, at the time of that amendment to ORS 162.315, Oregon appellate courts had acknowledged that resisting arrest did not include passive resistance. *See State v. Swanson*, 34 Or App 59, 62, 578 P2d 411 (1978) ("Neither flight from arrest nor passive resistance should be made crimes in themselves." (Quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 206, 204 (July 1971)); *State v. Crane*, 46 Or App 547, 555, 612 P2d 735 (1980) (also quoting same commentary).

ORS 162.247 was enacted in 1997, but without the "passive resistance" exception. Or Laws 1997, ch 719, § 1. Despite that omission, discussion in the Senate Crimes and Corrections Committee emphasized a legislative intention that an individual's right to protest the government was not affected. Representative Floyd Prozanski, a key proponent in the enactment of ORS 162.247, stated:

> "There is one thing I think the Court of Appeals addressed as to making sure that whatever conduct that we are going to attempt to regulate at the state level does not interfere with the individual's right to oppose a governmental process. My concern is that I don't think this statute should be set up as a means to keeping an individual from expressing their dislike or concern for the administrative process or the political process. Instead, this should be limited and it is my intent that this be limited to where you have an officer in the field who is attempting to perform their duties as required under law such as issuing a citation * * *.
>
> "* * * * *
>
> "* * * I want to make certain that we retain some balance and that people have the ability to raise discourse that they have with the government process. * * * We have a body of law that goes with resisting arrest that so long as the resistance is passive it's permissible."

Testimony, Senate Crime and Corrections Committee, SB 423, Feb 19, 1997, Tape 13, Side A, (statements of Rep

Prozanski). In that remark, Prozanski was referring to a case we decided that held that a City of Eugene ordinance—which prohibited "'any physical act *** that prevents or could reasonably be expected to prevent a police officer from performing his or her duties'" and expressly forbade "any 'refusal to leave a particular area in response to a lawful order from a police officer'"—was preempted by ORS 162.315 (the resisting arrest statute). *See Kruk*, 128 Or App at 419-20. That was so because ORS 162.315's exclusion of passive resistance conflicted with the ordinance's prohibition of a "'refusal to leave a particular area in response to a lawful order from a police officer.'" *Id.* at 420-21.

In 1999, the legislature amended ORS 162.247 to expressly exclude engaging in passive resistance from conduct subject to criminal sanction. The House Judiciary Committee discussed the reason for the amendment, and Representative Prozanski explained that the amendment was intended to protect the rights to protest and participate in civil disobedience:

> "In my community there are a lot of people that want to have passive resistance under the MLK approach or the Gandhi approach of just basically being there as a presence but not doing anything physically to the way of waving arms or swinging stuff. *** That's the other reason that I wanted to make certain that the crime of interfering would not include a passive civil disobedience protestor. So if an order comes in to move, they're not going to be cited for this particular crime."

Tape Recording, House Judiciary Committee, SB 3374, May 4, 1999, Tape 178, Side B (statement of Rep Prozanski).

In response to an inquiry by Representative Jo Ann Bowman about whether civil disobedience would still be protected under the amendment, Committee Chair and Representative Kevin Mannix replied:

> "So if you were lying down and officers had to pick you up, that was okay. On the other hand, if they were trying to pick you up and you started swinging at them or whatever, doing something physically *** that that became at least interference if not resistance, but you had to be doing something physically to resist or to interfere, but, just being passive was not. Because we were trying to respect what I call

the traditional civil rights. Passive resistance when you just say, 'we're protesting, and we will not move.'"

Tape Recording, House Judiciary Committee, SB 3374, May 4, 1999, Tape 178, Side B (statement of Chair Mannix). Prozanski added:

"This is where we would be holding someone accountable for interfering with a peace officer and the intent of all the previous legislation including resisting arrest that if someone was passively resisting they would not be subject to a charge of either resisting arrest or and it's always been intended that they would not be subject to a charge of interfering with a peace officer and this basically clarifies that if someone is passively resisting such as in a protest situation they would not be subject to this law, specifically if an officer asked them or ordered them to stand up to be arrested. That could be interpreted as refusal to obey a lawful order of an officer and since this was supposed to protect the safeguards of the individuals that are peacefully without any violence protesting that they would not be held accountable so long as it was only passive resistance."

Tape Recording, House Judiciary Committee, HB 3374, May 6, 1999, Tape 178, Side B (statement of Rep Prozanski).

In sum, the legislative purpose of the 1999 amendment to ORS 162.247 was to recognize an established right of individuals to engage in passive resistance without being subject to criminal sanction for that conduct. Defendant's argument isolates portions of the Judiciary Committee remarks—distinguishing when a protestor "started swinging at [officers] or whatever, doing something physical" and "waving arms or swinging stuff"—to support his contention that passive resistance means any noncompliant behavior that is not violent or that does not physically oppose a police officer. That argument, however, ignores clear declarations from legislators during the law's enactment that what they had in mind to protect are refusals to move or to stand when an individual is engaging in governmental protest or civil disobedience—an understanding in accord with the term's common meaning. Defendant's posited definition of passive resistance, by contrast, would, if not swallow whole the prohibition of refusing to comply with a peace officer's lawful order, render it ineffectual to an extent not contemplated by the legislature.

In accord with the plain meaning of "passive resistance," our inquiry under ORS 162.247(3)(b) is more specific: We ask whether the defendant was engaging in specific acts or techniques that are commonly associated with governmental protest or civil disobedience. The statute does not draw distinctions based on the particular message conveyed by those acts or techniques, and we need not concern ourselves with such distinctions. That is, the decisive question is not whether the purpose of defendant's actions was (to pick one example) to force concessions from the government; the question is whether defendant was engaging in an act or technique commonly associated with that kind of protest. That view is consistent with the plain meaning of "passive resistance," which speaks to resistance that "depends mainly on *techniques* and *acts* of noncooperation." *Webster's* at 1651 (emphasis added).

The legislature in its comments provided examples of what acts constituted "engaging in \* \* \* passive resistance," namely, refusal to move or to stand after being given an order to do so. However, we note that, as the Supreme Court has recognized elsewhere, the exception for passive resistance in ORS 162.247 potentially allows for methods of passive resistance other than the acts specifically identified in the legislative history, so long as the "techniques" or "acts of noncooperation" have some connection to an individual's right to protest or engage in civil disobedience. *See State v. Illig-Renn*, 341 Or 228, 242-43, 142 P3d 62 (2006) ("Whatever the term 'passive resistance' may encompass, it speaks to particular fact patterns that will exist at the fringes of the 'lawful order' inquiry and, as such, may be occasions for arguments about the precision of jury instructions."); *see also South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531, 724 P2d 788 (1986) ("Statutes ordinarily are drafted in order to address some known or identifiable problem, but the chosen solution may not always be narrowly confined to the precise problem. The legislature may and often does choose broader language that applies to a wider range of circumstances than the precise problem that triggered legislative attention.").

Here, the police officers directed defendant several times to stop what he was doing and to get down on the

ground. Not only did defendant refuse to do so, he also continued to move about the Jeep, put the Jeep's top on, tried to put the Jeep's door on, removed something from a boat, approached Schilder using an aggressive tone, and backed away from Wileman.[5] Whatever defendant's particular reason for ignoring the officer's commands and continuing to work on his Jeep, he was not engaging in an act or technique of noncooperation that is commonly associated with government protest or civil disobedience. The state adduced evidence from which a jury could find that defendant was not engaging in passive resistance within the meaning of the statute and was refusing to obey a lawful order by a peace officer. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

---

[5] The trial court in its denial of the motion for judgment of acquittal stated that defendant was "yanking his arms away." As defendant correctly points out, that fact was relevant only to the charge of resisting arrest. Nonetheless, the trial court's conclusion that there was sufficient evidence for a jury to find that defendant's conduct was not passive resistance still holds.