On appellant's amended petition for reconsideration filed April 26, reconsideration allowed, former disposition (284 Or App 315) withdrawn; in Case No. D151118M, conviction for interfering with a peace officer reversed, otherwise affirmed; in Case No. D143941M, affirmed July 6, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEXANDRIA LYNN WASHINGTON,
*Defendant-Appellant.*

Washington County Circuit Court
D143941M, D151118M
A160241 (Control), A160242

401 P3d 297

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, for petition.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.

## DUNCAN, J. pro tempore

In this criminal case, defendant appealed from the judgments in two cases, assigning error to her conviction for interfering with a peace officer (IPO), ORS 162.247,[1] in one of the cases.[2] We affirmed without a written opinion, *State v. Washington*, 284 Or App 315, 391 P3d 1011 (2017).

Now, defendant and the state have filed a joint petition for reconsideration of that decision.[3] *See* ORAP 6.25 (governing petitions for reconsideration). The parties agree that, under the Supreme Court's decision in *State v. McNally*, 361 Or 314, 392 P3d 721 (2017), which was issued after our decision in this case, defendant's conviction for IPO should be reversed because the conduct upon which the conviction was based constituted "passive resistance," which is expressly excluded from the definition of IPO. ORS 162.247(3)(b) (the

---

[1] ORS 162.247 provides, in part:

"(1) A person commits the crime of interfering with a peace officer * * * if the person, knowing that another person is a peace officer * * *:

"* * * * *

"(b) Refuses to obey a lawful order by the peace officer * * *.

"* * * * *

"(3) This section does not apply in situations in which the person is engaging in:

"(a) Activity that would constitute resisting arrest under ORS 162.315; or

"(b) Passive resistance."

[2] Defendant filed notices of appeal in both A160241 (Washington County Circuit Court Case No. D143941M) and A160242 (Washington County Circuit Court Case No. D151118M), and the cases were consolidated for appeal. Defendant did not raise any assignments of error concerning the judgment in A160241. Her only assignment of error concerns the IPO conviction in A160242. In that case, she was also charged with failure to carry and present a license, ORS 807.570, and improper use of an emergency reporting system, ORS 165.570 (2015), *amended by* Or Laws 2016, ch 74, § 3. The state dismissed the failure to carry and present a license count after defendant presented, on the day of trial, a license that had been valid at the time of the violation, *see* ORS 807.570(3) (providing that "it is a defense to any charge under this section that the person so charged produce a license * * * that had been issued to the person and was valid at the time of violation of this section"), and she was acquitted of the improper use of an emergency reporting system count.

[3] The amended petition for reconsideration was signed and filed by appellant's attorney, but stated, in accordance with ORAP 16.40(3)(b), that "all parties consent or stipulate to this document."

IPO statute "does not apply in situations in which the person is engaging in * * * passive resistance"). For the reasons explained below, we agree.

A police officer stopped defendant for traffic violations and ordered her to provide her identification, and defendant refused to do so. The officer told defendant that she was required to produce her license and that failure to do so could result in arrest. Defendant again refused to produce her license. Defendant asked the officer for his name and badge number, told him that she was recording their conversation on her phone, and asked him questions that she had written down on a piece of paper, including questions about whether the officer was going to harm her. Although defendant did not provide her identification, she was calm and polite, and she did not engage in any threatening or violent behaviors.[4]

Based on defendant's failure to provide her identification, the state charged defendant with IPO, in violation of ORS 162.247(1)(b), alleging in a complaint that defendant "did unlawfully and knowingly refuse to obey a lawful order of [the officer], a person known by the defendant to be a peace officer."

During the subsequent jury trial, defendant moved for a judgment of acquittal on the IPO charge, asserting that her conduct constituted "passive resistance" under *State v. Patnesky*, 265 Or App 356, 335 P3d 331 (2014), *abrogated by State v. McNally*, 361 Or 314, 392 P3d 721 (2017), in which we held that, for the purposes of ORS 162.247, "passive resistance" refers to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *Patnesky*, 265 Or App at 366.

---

[4] After defendant refused to provide her identification, several other officers responded to the scene, including a sergeant who took over the questioning of defendant. When the sergeant asked defendant for her identification, defendant again refused to provide it and read questions about whether the sergeant was going to use force against her. According to the sergeant, defendant was calm and polite. She did not threaten the officers, and she did not attempt to leave or fight. The sergeant was trained to de-escalate situations, and both he and defendant testified that he was able to do that in this case. Eventually, the police were able to identify defendant through Oregon Department of Motor Vehicles' (DMV) records and issue her a citation.

The state opposed defendant's motion, asserting that defendant's conduct did not fall within the passive-resistance exception because the exception was intended to apply to "civil disobedience protests" and defendant's conduct was "not akin to civil disobedience" because it did not "seem like she was really protesting anything[.]" The state analogized the facts of this case to those in *State v. Rice*, 270 Or App 50, 346 P3d 631, *rev den*, 357 Or 743 (2015), in which we held that the trial court had properly denied the defendant's motion for a judgment of acquittal on an IPO charge based on evidence that the defendant had closed the door of his house after an officer asked him to step outside to perform field sobriety tests, because "[a] rational trier of fact could have found that defendant's action—closing his door on an officer investigating a crime—was not a specific act or technique of noncooperation 'commonly associated with governmental protest or civil disobedience.'" *Id.* at 57 (quoting *Patnesky*, 265 Or App at 366); *see also Patnesky*, 265 Or App at 367 (affirming the trial court's denial of defendant's motion for judgment of acquittal on an IPO count on the ground that the defendant's conduct—ignoring officers' orders to stop working on his vehicle, turn around, and get on the ground—did not constitute "passive resistance" because it was not "an act or technique of noncooperation that is commonly associated with government protest or civil disobedience").

The trial court denied defendant's motion, and a jury convicted defendant.

As mentioned, defendant appealed, assigning error to the trial court's denial of her motion for judgment of acquittal on the IPO charge. In support of her assignment of error, defendant made two arguments. First, she argued, as she had in the trial court, that, under *Patnesky*, her conduct constituted passive resistance for the purposes of ORS 162.247, because her refusal to identify herself was "a specific act or technique that is associated with protest activity and civil disobedience." Second, she argued, in the alternative, that we had interpreted "passive resistance" too narrowly in *Patnesky* and that we should overrule *Patnesky* and hold that "passive resistance" refers to "any refusal to obey a lawful order that is not physically active or violent in

nature—whether or not the refusal is motivated by political purposes." In support of that argument, defendant relied on the brief filed by the defendant in *McNally*, 361 Or 314, which was pending in the Supreme Court. Rejecting both of defendant's arguments, we affirmed without a written opinion. *Washington*, 284 Or App 315.

Thereafter, the Supreme Court issued its decision in *McNally*, reversing our decision in *McNally* and abrogating *Patnesky*. *McNally*, 361 Or at 330-34. Four justices joined in the court's majority opinion and three justices concurred in the judgment.

In our decision in *McNally*, we applied *Patnesky* and held that the trial court did not err by denying the defendant's request for a jury instruction regarding the passive-resistance exception because, as a matter of law, the evidence was insufficient to support a finding that the defendant— who, after getting into an argument with a ticket agent, had refused to obey police orders to leave a bus station— had engaged in "passive resistance." We explained, "Even assuming that the jury credited defendant's version of the events, nothing suggests that defendant was engaging in a non-cooperative technique or act known to be used to protest government action. Therefore, the trial court correctly refused to give defendant's proposed passive-resistance instruction." *State v. McNally*, 272 Or App 201, 207, 353 P3d 1255 (2015), *rev'd*, 361 Or 314, 392 P3d 721 (2017); *see id.* ("A party is generally entitled to have the court instruct a jury on a legal principle if there is evidence to support it and the proposed instruction accurately states the law.").

On review, the Supreme Court interpreted the term "passive resistance" for the purposes of the passive-resistance exception in ORS 162.247. Both the majority and the concurrence rejected our interpretation of the term as too narrow, in that it was limited to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *McNally*, 361 Or at 330 ("[W]e disagree with the Court of Appeals that the ordinary meaning of 'passive resistance' requires consideration of particular 'acts or techniques of noncooperation.'"); *McNally*, 361 Or at 348 (Kistler, J., concurring). The majority held that,

for the purposes of ORS 162.247, "passive resistance" refers to

> "noncooperation with a peace officer's lawful order that does not involve violence or active measures, whatever the motivation for the noncooperation and regardless of whether the noncooperation takes the form of acts, techniques, or methods commonly associated with civil rights or other organized protest."

361 Or at 334; *id.* at 339 ("[T]he phrase 'passive resistance' in ORS 162.247 refers to noncooperation with a lawful order of a peace officer that does not involve active conduct."). Accordingly, the majority concluded that the trial court in *McNally* had erred by failing to give the defendant's requested passive-resistance instruction. 361 Or at 339.

The concurrence concluded that the majority's interpretation of "passive resistance" was too broad and would have held that "passive resistance" "requires both an act (passive or peaceable noncompliance) taken for a reason (to express a position on a governmental or other policy)" and that "[p]assive noncompliance, by itself, is not enough." 361 Or at 347 (Kistler, J., concurring). But, even under its alternate definition, the concurrence agreed that the trial court erred by failing to give the defendant's requested instruction.[5]

In light of *McNally*, our task on reconsideration is to determine whether, viewing the evidence in the light most favorable to the state, defendant's conduct constituted "passive resistance," as defined by *McNally*, as a matter of law. *See State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) ("Error, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial."); *see also State v. Inloes*, 239 Or App 49, 54, 243 P3d 862 (2010) (reversing defendant's

---

[5] In *McNally*, there was evidence that, when the defendant refused to leave the bus station, he tried to explain the situation and told the officers that they "'couldn't make him leave.'" 361 Or at 319. In addition, the defendant testified at trial that "he viewed the police officer's order to leave the bus station as a 'huge injustice.'" *Id.* The state conceded that, "if 'passive resistance' turns on why the defendant declined to comply with the officer's orders, there was evidence from which [the] jury could have found that he did so to express a position on a governmental or other policy." 361 Or at 349 (Kistler, J., concurring).

conviction on the ground that, although the conviction was supported by sufficient evidence under the standard applicable at the time of trial, the standard had been altered between trial and appeal, and the evidence was insufficient under the new standard).

As described above, defendant was charged with IPO for failing to provide identification to a police officer during a traffic stop. The parties agree that defendant did not engage in violence or any other physical act of resistance. They also agree that, under *McNally*, defendant's conduct constituted "passive resistance," that is, "noncooperation with a lawful order of a peace officer that does not involve active conduct." 361 Or at 339.

Indeed, in its *McNally* decision, the Supreme Court signaled that conduct like defendant's constitutes "passive resistance" for the purposes of ORS 162.247. When objecting to the breadth of the majority's interpretation of "passive resistance," the concurrence observed:

> "Under the majority's reasoning, a driver who declines, for any reason or no reason, to provide his or her driver's license to any officer during a lawful traffic stop has engaged in 'passive resistance' and, as a result, has a complete defense to the charge of refusing to comply with the officer's order."

361 Or at 340 (Kistler, J., concurring). The concurrence objected to that interpretation, asserting that the driver's reason for refusing to provide his or her license would affect whether the refusal constituted "passive resistance." *Id.* at 348-49 (Kistler, J., concurring). According to the concurrence, the refusal would constitute "passive resistance" only if, as a matter of fact, the driver's intent was "to express a position regarding a governmental or other policy." *Id.* (Kistler, J., concurring).

The majority did not dispute the concurrence's understanding of the effect of the majority's interpretation of "passive resistance." Instead, the majority suggested that, even if a driver's refusal to provide a license did not constitute IPO, it could constitute another crime. 361 Or at 338. Specifically, the majority observed:

"[A]lthough a driver who passively declines to provide his or her driver's license because the license is suspended *could perhaps* raise passive resistance as a defense to the prosecution for refusing to comply with the lawful order of a peace officer, that driver nevertheless could be charged with the misdemeanor offense of failing to present a driver's license. ORS 807.570."[6]

*Id.* (emphasis added).[7]

Although the majority stated only that a driver who passively declines to provide his or her license "could perhaps" raise the passive-resistance defense, given the majority's interpretation of "passive resistance," the parties in this case agree that the defense applies and, therefore, defendant was entitled to a judgment of acquittal on the IPO count.

We agree. There was no evidence that defendant's conduct constituted anything other than "passive resistance" for the purposes of ORS 162.247, as construed by the Supreme Court in *McNally.* That is, there was no evidence that defendant's "noncooperation with a peace officer's lawful order *** involve[d] violence or active measures[.]" 361 Or at 334. Therefore, defendant is entitled to reversal of her IPO conviction.

Reconsideration allowed; former disposition withdrawn. In Case No. D151118M, conviction for interfering with a peace officer reversed; otherwise affirmed. In Case No. D143941M, affirmed.

---

[6] The court continued, "And, of course, if the legislature determines that passive resistance, as interpreted and applied here, unduly complicates the work of peace officers in protecting public safety and enforcing the law, it can amend ORS 162.247 to strike a different balance between the requirement to obey a peace officer's lawful order and the individual's existing statutory right passively to resist such an order." *McNally,* 361 Or at 338-39.

[7] As noted, in this case, defendant was charged with failure to present a driver's license in violation of ORS 807.570, but that charge was dismissed on the state's motion on the day of the trial because defendant produced a valid license, and doing so is a defense under ORS 807.570(3).