SHORR, J.
*765 Defendant appeals a judgment of conviction for aggravated harassment (Count 1), ORS 166.070 ; resisting arrest (Count 2), ORS 162.315 ; and interfering with a peace officer (Count 3), ORS 162.247, and another judgment of conviction revoking her probation. Defendant assigns error to the trial court's failure to sua sponte issue a judgment of acquittal on Count 3. Defendant alternatively assigns error to the court's failure to sua sponte instruct the jury on "passive resistance," as that term has been construed in State v. McNally , 361 Or. 314, 392 P.3d 721 (2017). Defendant acknowledges that both assignments of error were unpreserved and requests that we exercise our discretion to review for plain error. For the reasons that follow, we affirm the judgments of the trial court.
Defendant was riding a TriMet MAX train when Officer Berry, a Beaverton officer assigned to the Transit Division, asked for
proof of defendant's fare. Defendant did not have valid fare, and Berry asked defendant to get off at the next stop. Defendant became "kind of irate" and "pretty rude." When the train reached the next transit stop, defendant, Berry, and other officers got off the train, and Berry issued a 30-day TriMet exclusion to defendant. After Berry handed defendant the related paperwork, Berry noticed that defendant was still standing close to her on the platform. Berry told defendant that she needed to either purchase a valid ticket or leave the platform. Defendant turned to walk away, but then defendant stopped, turned back toward Berry, and spat on Berry's shoe. Berry then told defendant that she was under arrest. Berry attempted to put defendant in handcuffs, but defendant "whipped" her arm away. Two of the other officers came to Berry's assistance. Defendant continued to struggle and "scream" at the officers, who eventually got defendant on the ground and in handcuffs.
Once defendant was in handcuffs, two officers walked her off the MAX platform, toward a parking area. With an officer on each side of her, defendant dropped her weight so that she "threw herself" or "fell" to the ground. The officers ordered defendant to stand up, but defendant refused, saying in effect that "it was now [the officers'] job *766 and that [they] were strong enough and [they] should be capable of carrying her into a police car." Two officers physically lifted defendant from underneath her armpits and another officer carried defendant's legs. The officers carried defendant to the patrol car and "somewhat" put her inside. One of the officers went to the other side of the car and pulled on defendant's arms while another officer pushed on her thighs, and together they were able to "shove" defendant mostly into the back of the car, with only her legs sticking out one of the open doors. The officers ordered defendant to bend her knees and put her feet inside the car, but defendant refused and instead "stiffened her legs out" so that the door would not shut. Berry forced defendant's knees to bend by pushing underneath her kneecaps. One officer testified that the encounter with defendant "was just a continual fight since-since we were on the platform with her."
Among other charges stemming from the incident, defendant was charged with interfering with a peace officer (IPO), ORS 162.247, for "unlawfully and knowingly refus[ing] to obey a lawful order of [Officer] Berry, a person known by the defendant to be a peace officer." ORS 162.247 provides, in pertinent part, that a person commits the crime of IPO if the person,
"knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181A.355 :
"* * * * *
"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer.
"* * * * *
"(3) This section does not apply in situations in which the person is engaging in:
"* * * * *
"(b) Passive resistance. "
(Emphasis added.) At the time of defendant's trial, the controlling definition of "passive resistance" limited it to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." State v. Patnesky , 265 Or. App. 356, 366, 335 P.3d 331 (2014), abrogated by McNally , 361 Or. 314, 392 P.3d 721.
*767 Defendant's case proceeded to a jury trial. At trial, the state's theory in regard to IPO was that, after defendant was handcuffed and off the platform, she refused to obey Berry's orders to stand up, get into the patrol car, and bend her knees.[1] Defendant
did not move for a judgment of acquittal on the basis that her conduct amounted to passive resistance, nor did defendant request a jury instruction on passive resistance, although she raises those unpreserved errors on appeal. The jury found defendant guilty on all counts, and the trial court entered a judgment of conviction. Defendant was also found to be in violation of her probation on another, unrelated case because of the above-mentioned convictions.
Approximately one month after defendant was convicted, the Supreme Court decided McNally , which abrogated Patnesky and held that passive resistance is not limited to acts of governmental protest or civil disobedience. Rather, the court held that passive resistance
"refers to noncooperation with a peace officer's lawful order that does not involve violence or active measures, whatever the motivation for the noncooperation and regardless of whether the noncooperation takes the form of acts, techniques, or methods commonly associated with civil rights or other organized protest."
361 Or. at 334, 392 P.3d 721 (emphasis added). Passive resistance "does not involve active conduct." Id. at 339, 392 P.3d 721. At the outset, we accept-and the state does not dispute-defendant's assertion that, because "[e]rror, in general, must be determined by the law existing at the time the appeal is decided, and not as of the time of trial,"
*768 State v. Jury , 185 Or. App. 132, 136, 57 P.3d 970 (2002), rev. den. , 335 Or. 504, 72 P.3d 636 (2003), on appeal we must apply the definition of passive resistance that was articulated in McNally .
Based on McNally , defendant first assigns error on appeal to the trial court's failure to sua sponte issue a judgment of acquittal on the IPO charge, arguing that, because her actions did not rise above the level of passive resistance, she was entitled to a judgment of acquittal. In the alternative, defendant assigns error to the trial court's failure to sua sponte instruct the jury on passive resistance. Defendant concedes that her arguments are unpreserved but requests that we exercise our discretion under ORAP 5.45(1) to review the matter for plain error.
We may consider an unpreserved error under the plain-error doctrine. ORAP 5.45(1). Our plain-error analysis is conducted in two steps: First, we determine whether the error is "apparent on the face of the record," which means that the error is (1) one of law, (2) obvious and not reasonably in dispute, and (3) does not require us to choose between competing inferences or go outside the record to correct it. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 381-82, 823 P.2d 956 (1991). Second, if we determine that the trial court committed plain error, we must decide whether to exercise our discretion to correct it. See id. at 382 n. 6, 823 P.2d 956 (identifying several factors we are to consider when deciding whether to correct plain error); see also State v. Reynolds , 250 Or. App. 516, 521, 280 P.3d 1046, rev. den. , 352 Or. 666, 293 P.3d 1045 (2012) (identifying additional factors).
In her first assignment of error, defendant argues that, after McNally , the trial court erred in failing to sua sponte acquit her of the IPO charge because the state failed to present sufficient evidence to show that defendant's conduct "constituted anything other than 'passive resistance' for the purposes of ORS 162.247." State v. Washington , 286 Or. App. 650, 658, 401 P.3d 297 (2017). Defendant asserts that the evidence presented at trial was insufficient to support her conviction because the officers "uniformly" testified that, once defendant dropped to the ground, she did not fight or resist when she refused their orders to get up and get into the patrol car. Defendant argues that the evidence *769 shows that defendant had simply refused to get up by her own power, a characterization of the evidence that defendant argues can be understood only to be passive resistance. Thus, defendant argues that the trial court was required to acquit her of IPO.
The state disputes defendant's characterization of the testimony, arguing that evidence in the record shows that defendant engaged in "active measures." The state points out that one of the officers testified that, while the officers were shoving defendant into the patrol car, defendant "continued to fight this whole time," that she "stiffened
her legs out-out the door, so we wouldn't be able to close the door," and that the encounter with defendant was "just a continual fight since-since we were on the platform with her."[2]
We have regularly declined, for "sound prudential and institutional reasons," to exercise our discretion to review for plain error in cases involving a purported insufficiency of the evidence when the defendant failed to move for a judgment of acquittal. State v. Inloes , 239 Or. App. 49, 54, 243 P.3d 862 (2010). We have applied an exception to that general approach when an intervening change in the law makes it plain that the "defendant's convictions were predicated on legally insufficient evidence." Id. Here, however, we are not faced with such a circumstance because the parties' arguments regarding the nature of the evidence illustrate why plain-error review is not appropriate in this case.
This case is not a suitable case for plain-error review because the legal point at issue is not "obvious." State v. Brown , 310 Or. 347, 355, 800 P.2d 259 (1990). We review "questions of the sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential *770 element[s] of the crime beyond a reasonable doubt." State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). In that light, defendant's conduct is sufficiently distinguishable from our previous cases applying the passive resistance standard from McNally . Here, it is not "obvious" that the evidence was legally insufficient to convict defendant of IPO because her conduct was passive resistance.
We have previously held that, under McNally , a defendant's refusal to obey an order to leave the airport was passive resistance. State v. Estabrook , 295 Or. App. 268, 269, 433 P.3d 500 (2018), rev. den. , 364 Or. 723, 440 P.3d 671 (2019). Similarly, we have held that a defendant's refusal to provide identification to a police officer during a traffic stop amounted to passive resistance. Washington , 286 Or. App. at 658, 401 P.3d 297. In Patnesky , we noted that the legislative history of ORS 162.247 indicates that the legislature intended acts of passive resistance to include a refusal to stand or move after being given an order to do so. 265 Or. App. at 364, 335 P.3d 331.[3] Defendant's conduct here, however, rises above a mere refusal to stand or move. We have not considered the extent to which a defendant who stiffens her body to prevent being put into a police car engages in passive resistance based on our understanding of passive resistance after McNally , and in the context of IPO. But see State v. Remsh , 221 Or. App. 471, 190 P.3d 476 (2008) (holding that, in the context of resisting arrest, the defendant did not engage in passive resistance when he jerked away from the arresting officer). We do not foreclose that possibility in future cases, however, plain-error review is inappropriate here because it is not obvious that defendant was entitled to a judgment of acquittal. At a minimum, there is at least *771 a reasonable dispute in this case whether, by stiffening her legs out the door of the police car after a
process described as a "continual fight," defendant was engaged in conduct that could be understood to be only passive resistance or whether her conduct involved active measures.
Turning to defendant's second assignment of error, defendant argues, in the alternative, that the trial court erred when it failed to sua sponte instruct the jury on passive resistance. Defendant again concedes that the error is unpreserved and requests that we exercise our discretion to review the matter for plain error. Defendant argues that, because evidence exists that she engaged in "inactive, non-violent noncooperation," she was entitled to a jury instruction on passive resistance, notwithstanding her failure to request such an instruction. For the following reasons, defendant is incorrect.
Review of an unpreserved instructional error, "like any other purported plain error, is determined by reference to the construct prescribed in State v. Brown , 310 Or. 347, 800 P.2d 259 (1990), and Ailes ." State v. Gray , 261 Or. App. 121, 129, 322 P.3d 1094 (2014). The first and third elements from Brown and Ailes , which are described above, are not at issue because the question of what must be included in jury instructions is a question of law, and what was included in the jury instructions here can readily be determined by the record. Therefore, the only issue is whether the error was "obvious." Brown , 310 Or. at 355, 800 P.2d 259.
A trial court is required to "state to the jury all matters of law necessary for its information in giving its verdict." ORCP 59 B; ORS 136.330(1) (applying ORCP 59 B to criminal cases). "Instructional error exists where the instructions give the jury an incomplete and thus inaccurate legal rule to apply to the facts[.]" State v. Abram , 273 Or. App. 449, 452, 359 P.3d 431 (2015). Accordingly, a trial court must instruct the jury on all material elements of the charged crime, and failure to do so is plain error. Gray , 261 Or. App. at 130, 322 P.3d 1094 (citing State v. Lotches , 331 Or. 455, 472, 17 P.3d 1045 (2000), cert. den. , 534 U.S. 833, 122 S.Ct. 82, 151 L.Ed.2d 45 (2001) ). Additionally, when a defense other than an affirmative defense is "raised," a trial court errs in failing to instruct the jury that the state bears the burden *772 to disprove the defense where defendant's evidence puts it at issue. Abram , 273 Or. App. at 456, 359 P.3d 431 ; ORS 161.055(1) ("When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at trial, the state has the burden of disproving the defense beyond a reasonable doubt."). Thus, at most the trial court here had an obligation to instruct the jury on passive resistance only if it is either an element of IPO or a defense other than an affirmative defense that defendant "raised" at trial. See ORS 161.055(3) (" 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."). It is neither.
After applying the interpretive methodology set out in State v. Gaines , 346 Or. 160, 206 P.3d 1042 (2009), we conclude that passive resistance is not an element of IPO. State v. Boly , 210 Or. App. 132, 135, 149 P.3d 1237 (2006) ("whether a statutory provision describes an element of the state's case or an affirmative defense is a matter of legislative intent," ascertained by application of our ordinary statutory interpretation methodology). Under Gaines , we first examine the text of the statute in context, including the relevant rules of textual analysis, and any helpful legislative history. One such rule of textual analysis is the "negative exceptions" rule, which provides that, "when a statutory provision is plainly set out as an exception that stands apart from the description of the elements of an offense, the state is not required to negate the exception; rather, the exception constitutes an affirmative defense, which the defendant must establish to prevail." Boly , 210 Or. App. at 135, 149 P.3d 1237 ; see also State v. Vasquez-Rubio , 323 Or. 275, 278-79, 917 P.2d 494 (1996) (explaining the rule). Words of limitation, "such as 'except that,' 'however,' or 'provided that,' " typically signify that a statutory provision is plainly set out as an exception. Boly , 210 Or. App. at 135-36, 149 P.3d 1237.
Applying the negative exception rule to the text of ORS 162.247, we conclude that passive resistance is not an element of the offense.
Passive resistance is not included in subsection (1) of ORS 162.247, which identifies the elements of IPO. Instead, it is included in subsection (3) and is preceded by words of limitation, namely that interfering *773 with a police officer "does not apply" in situations involving passive resistance. That text and context indicate that passive resistance is not an element of IPO and may be an affirmative defense. See Boly , 210 Or. App. at 135, 149 P.3d 1237 (holding that, where "a statutory provision is plainly set out as an exception that stands apart from the description of the elements of an offense, the state is not required to negate the exception; rather, the exception constitutes an affirmative defense, which the defendant must establish to prevail").
Even assuming that passive resistance is not an affirmative defense but rather a defense that the state had the burden to disprove, defendant never "raised" that defense at trial. ORS 161.055(3) provides that
" '[r]aised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."
Here, defendant did not give notice to the state of her intention to raise a passive resistance defense before the commencement of the trial. Moreover, defendant did not call any witnesses at trial, and therefore did not present affirmative evidence of passive resistance. Accordingly, ORS 161.055(1) does not require the state to have disproven passive resistance beyond a reasonable doubt.[4]
Because passive resistance is neither an element of IPO nor a defense other than an affirmative defense that defendant raised, the trial court did not plainly err in failing to instruct the jury on passive resistance. We are aware of no cases, and the parties have presented none, in which a trial court erred for failing to sua sponte instruct a jury on either an affirmative defense or a defense that had not been raised by defendant. Therefore, notwithstanding the change in the law after McNally , on which we agree defendant is entitled to rely, it is not obvious for purposes of plain-error *774 review that the trial court here had a burden to sua sponte instruct the jury on passive resistance. For that reason, the trial court's failure to instruct the jury on passive resistance was not plain error.
Affirmed.

During closing argument, the prosecutor explained as follows:
"Once they finally get [defendant] handcuffed and they walk over to the roundabout to have the Beaverton patrol car go pick them up is where we get to Count No. 3, the interfering with a peace officer. * * * Element number 3, that [defendant] knowingly refused to obey a lawful order by the peace officer. In this (inaudible) be given multiple orders, lawful orders. 'You need to get up. Please get up. Stand up.'
"* * * * *
"Not only was she refusing to get up, but also (inaudible) trying to get her into the patrol car. She again refused to comply with all the orders of getting into the patrol car. 'Bend your knees.' For her own safety. Still refusing to comply with those orders."

The state also raises the possibility that defendant's verbal act in "screaming," at the officers could also constitute "active measures." The state distinguishes defendant's conduct here from that of the defendant in Washington , who we noted was "calm and polite." 286 Or. App. at 653, 401 P.3d 297. Because we determine that defendant's assignment of error is not plain based on the evidence in the record of defendant's active physical conduct, we do not address that argument.

In Patnesky , we quoted at length from legislators' statements that revealed their intention regarding conduct that qualified as passive resistance. For instance, Representative Prozanski stated that
"[i]n my community there are a lot of people that want to have passive resistance under the MLK approach or the Gandhi approach of just basically being there as a presence but not doing anything physically to the way of waving arms or swinging stuff. * * * That's the other reason that I wanted to make certain that the crime of interfering would not include a passive civil disobedience protestor. So if an order comes in to move, they're not going to be cited for this particular crime."
265 Or. App. at 364, 335 P.3d 331.

The parties have not briefed the issue whether passive resistance is an affirmative defense or a defense that the state bears the burden of disproving. Because here we conclude that the trial court was not required to instruct the jury on passive resistance because it was neither an element of the offense nor a defense other than an affirmative defense that defendant raised at trial, we expressly do not decide whether passive resistance is an affirmative defense or a defense under ORS 161.055(1).