Argued and submitted March 4, affirmed August 11, petition for review denied November 24, 2021 (368 Or 787)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM CONRAD BUTLER,
*Defendant-Appellant.*

Washington County Circuit Court
19CN00828; A171606

494 P3d 1031

Defendant appeals from a probation violation judgment. He was found to have violated the no-contact provision of his probation by posting about the victim on his Facebook page. He argues that the trial court erred in concluding that the evidence supported a finding by a preponderance of the evidence that he had "contacted" the victim and that his probation conditions did not restrict him from simply talking about the victim. *Held*: Viewed in the light most favorable to the state, the record permits the conclusion that defendant was more likely than not trying to contact the victim. The record reflects that defendant repeatedly created new Facebook accounts 24-48 hours after being blocked by the victim and continued making posts directly addressed to the victim. Even after defendant's probation officer warned him that the victim was seeing his messages, he continued to create new accounts and post messages to her. The trial court did not err in concluding that defendant violated his probation conditions.

Affirmed.

Ricardo J. Menchaca, Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Weston Koyama, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment that he violated the no-contact provision of his probation by posting about the victim on his Facebook page. Because the evidence was sufficient for a rational factfinder to conclude by a preponderance of the evidence that defendant was intending to communicate with the victim, we affirm.

Defendant posted numerous messages both about and addressed to the victim, R, as well as pictures of the two of them together, on his Facebook page. After R blocked defendant's Facebook account, which would prevent her from seeing his page, defendant created another account, which Facebook displayed on R's homepage as a suggested friend. When she visited that suggested account and saw that defendant had posted more messages about her, she blocked him again. After that, defendant created another account and the pattern repeated. Defendant would typically create a new profile within 24 to 48 hours of R blocking defendant. Defendant's probation officer informed him that R was in fact reading the posts and instructed him to stop, but defendant continued to create new accounts and post new messages. In the end, R blocked nine different Facebook accounts with different permutations of defendant's name, some or all of which had no Facebook friends.

The state charged defendant with a violation of a special probation condition that provided, "The defendant shall not attempt to contact or have direct or indirect contact with the victim[ ]." After a hearing, the trial court concluded that, although it was a "gray area," it was clear that the posts on those accounts were "meant for really nobody's eyes *** other than [R's]." Accordingly, the court concluded that defendant was attempting to have indirect contact with R in violation of his probation.

Defendant appeals, arguing that his probation conditions do not preclude him from speaking publicly about R, which is essentially what posting on a Facebook page is. The state responds that the nature of the posts and the efforts of creating new unblocked profiles allowed for the inference that defendant was attempting to communicate with R.

Whether or not sufficient evidence exists to support a finding of a probation violation is a legal question. *State v. Stroud*, 293 Or App 314, 318, 428 P3d 949 (2018). In reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the state to determine whether the state proved by a preponderance of the evidence that the defendant violated a condition of his probation. *State v. Moravek*, 297 Or App 763, 769-70, 444 P3d 521, *rev den*, 365 Or 533 (2019); *State v. Paez-Lopez*, 155 Or App 617, 621, 964 P2d 1083 (1998).

This case is largely resolved by our standard of review. We are tasked with determining whether the evidence was sufficient to allow the trial court to infer that defendant intended to contact R when he posted Facebook messages on his own Facebook page, and thus that it was more likely than not that defendant violated a condition of his probation. There are two pieces of evidence that, taken together, allow for that inference.

First, defendant created new Facebook profiles, some or all of which had no actual Facebook friends, each time R blocked him. He would create those profiles within 24 to 48 hours of R blocking a previous profile. Once a profile was blocked by R, defendant could continue to post to the public; he simply could no longer communicate to *R*. Rather than accept that limitation, defendant repeatedly created new profiles that would be viewable by R.

Second, the text of the posts further supports the inference that defendant intended R to see them. Many of them were framed in language that appeared to be addressing R directly:

> "Can't we just talk…..I'm guessing from the message I got today and how angry he was….he made you take your Facebook down…..I'm worried and scared for you… I'm here….always…..and you're loved more than you know……I just wish you'd try…..give it a chance……see what happens….I love you wife.

> "I'm not doing anything other than trying to save our marriage[.] *** I've put 1000 in contributions into the account in less than a month…has it even been seen?….or does it matter?……This family loves you…..always has….they were

your mom and dad too remember?....my daughter was like
your daughter….we all love and miss you…..none more
than your husband….”

(Ellipses in original.) In addition to containing language
directly addressing R, the posts often concerned topics that
appear to relate only to R, including posts about the timing
of future monetary contributions:

“Just found out my long-term disability pays once a
month…..so my contributions to help out will be monthly
starting in April…..I just hope that works…….I know it’s
not what was expected….but it’s the best I can.”

(Ellipses in original.) The fact that defendant repeatedly
created new profiles shortly after R blocked him, combined
with the content of the messages on those profiles, could lead
to the inference that it was more likely than not that defen-
dant was attempting to contact R. *See State v. Crombie*, 267
Or App 705, 711, 341 P3d 841 (2014) (concluding that defen-
dant “contacted” victim by including messages directed to
her attached to court pleadings in their marital dissolution
case because a rational trier of fact could conclude that he
wanted the victim to read the messages).

Defendant contends that his creation of profiles was
evidence only that he was attempting to see R’s profile,[1] not
trying to communicate with her. Further, defendant points
out that R would not see the messages without taking the
proactive step of navigating to defendant’s page, meaning
that defendant did not intend to communicate as much
as R sought out the messages. Although those may very
well be permissible inferences, they are not the only ones.
According to R, she usually kept her profile public, meaning
that defendant did not need to make any new accounts to see
it. Moreover, that R clicked when Facebook’s algorithm con-
tinually made her aware of defendant’s new profiles is not
dispositive. The question is whether defendant *intended* her
to see the posts. A rational factfinder could conclude that he
created nine profiles for no reason other than to make it pos-
sible that R would see the posts, and he continued making

---

[1] Although not addressed by the parties or the trial court, the definition of
“contact” in defendant’s probation conditions includes “accessing victim’s social
networking sites.”

new profiles and posting on them even after his probation officer made him aware that R was seeing the messages.

Although the trial court could have permissibly reached the opposite result, the evidence allows a reasonable trier of fact to conclude that it was more likely than not that defendant was attempting to communicate with R.[2]

Affirmed.

---

[2] At oral argument, the state contended that the result in this case would be the same if defendant published similar messages in a book entitled "Dear Wife" that he hoped R would read, but took no steps to provide to her. We disagree. This case turns on the inference that defendant took steps to put the posts in R's view, not on his desire to express his feelings about R.